# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GASTELUM,<br><br>   Plaintiff,<br><br>   v.<br><br>FIVE BELOW, INC.,<br><br>   Defendant. | Case No. 1:22-cv-00825-AWI-SAB<br><br>ORDER SCREENING COMPLAINT<br><br>(ECF No. 1)<br><br>**DEADLINE: AUGUST 22, 2022** |

Plaintiff Fernando Gastelum ("Plaintiff") is proceeding *pro se*[1] in this accessibility litigation pursuant to the Americans with Disabilities Act (ADA) and state law against Defendant Five Below, Inc. ("Defendant" or "Five Below"). (ECF No. 1.) The Court issues the following *sua sponte* screening order pursuant to its independent obligation under Federal Rule of Civil Procedure 12(h)(3) to determine whether it has subject-matter jurisdiction over this matter. For the reasons discussed herein, the Court finds it lacks subject-matter jurisdiction and shall dismiss the complaint with leave to amend.

///

---

[1] The Court notes Plaintiff paid the filing fee for this action on July 5, 2022.

# I.

# LEGAL AUTHORITY

The Court has an independent obligation to determine whether it has subject-matter jurisdiction. See Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (noting that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived"); Wilson v. Lynch, 835 F.3d 1083, 1091 (9th Cir. 2016). Consequently, "[f]ederal courts are required sua sponte to examine jurisdictional issues such as standing." Bernhardt v. Cnty. of L.A., 279 F.3d 862, 868 (9th Cir. 2002) (internal quotation marks omitted and citations omitted); accord U.S. v. Hays, 515 U.S. 737, 742 (1995).

The existence of Article III standing is not subject to waiver. Hays, 515 U.S. at 742. Rather, it must be demonstrated "at the successive stages of the litigation." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). Finally, as set forth by Federal Rule of Civil Procedure ("Rule") 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[2] Fed. R. Civ. P. 12(h)(3); see also Arbaugh, 546 U.S. at 514 ("when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety"); see also Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1116 (9th Cir. 2004) (the court is obligated to evaluate its subject matter jurisdiction in each case and to dismiss a case when such jurisdiction is lacking).

Where, as here, the Court evaluates the jurisdictional issue facially, the court must accept the complaint's factual allegations as true. Comm. for Immigrant Rts. of Sonoma Cnty. v. Cnty. of Sonoma, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009); see also Wilhelm v. Rotman, 680 F.3d

---

[2] The Court further notes that, "[w]hen a court does not have jurisdiction to hear an action, the claim is considered frivolous," Gastelum v. HEES II, No. 21-CV-1337 JLS (RBB), 2022 WL 255426, at *1 (S.D. Cal. Jan. 27, 2022) (quoting Johnson v. E. Band Cherokee Nation, 718 F. Supp. 6, 6 (N.D.N.Y. 1989)), and the "purpose of [screening] is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." Nordstrom v. Ryan, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (referring to screening requirements pursuant to 28 U.S.C. § 1915(e)(2)) (citations and internal quotations omitted).

1113, 1121 (9th Cir. 2012) (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)) ("where the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings liberally and . . . afford the petitioner the benefit of any doubt."); U.S. v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that *pro se* filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers.") (citations and internal quotations omitted). Nonetheless, while factual allegations are accepted as true, legal conclusions are not. Bell Atlantic Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007). Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's factual allegations in the complaint as true only for the purpose of the instant *sua sponte* screening order.

Plaintiff alleges that he is a senior citizen and is missing a leg; sometimes he uses a wheelchair for mobility, whereas at other times, he uses a prosthetic leg and a cane. (Compl. ¶¶ 1, 3–4, ECF No. 1.) Plaintiff resides in Casa Grande, Arizona. (See id. at 1 (caption); see also ECF No. 1-1 ("Civil Cover Sheet").) Plaintiff alleges that Defendant Five Below owns a "public accommodation" located at 6467 Riverside Drive, Suite 112, Fresno, California 93722 (the "Store"). (Compl. ¶ 5.) Plaintiff never specifically alleges that Five Below is a store (or what kind of store it is), or other facts to establish it constitutes a "public accommodation";[3] however, the Court concludes Five Below is a store, based on Plaintiff's, albeit unspecified and generic, allegation that he attempted to shop for "goods or services" there. (See Compl. ¶¶ 10–11.)

---

[3] The Court notes that the Five Below located at the address asserted in the complaint markets itself on the store's official website as "a place with unlimited possibilities where tweens, teens and beyond are free to Let Go & Have Fun in a color-popping, music pumping, super-fun shopping experience" that sells "tech, tees, sports balls, beauty, candy, remote control toys and SO much more" at prices between $1–$5, see https://locations.fivebelow.com/ca/fresno/6467-riverside-drive (last visited Jul. 7, 2022); however, the Court does not take judicial notice of the website or the information contained therein, as it neither constitutes a governmental website nor contains "generally known" facts or accurate and readily accessible facts from sources "whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b); Daniels–Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities).

Plaintiff visited the Store on January 26, 2022, at which time he discovered it was not compliant with either the ADA or state law. (Id.) Specifically, (1) the Store's clear width of accessible routes was less than 36" between displays of merchandise, purportedly making it more difficult for Plaintiff to shop between displays of merchandise; and (2) the operable part of the public restroom door required the twisting of the wrist, which Plaintiff alleges makes it more difficult to open the door. (Id. at ¶ 11.) Plaintiff contends these "barriers" violate accessibility standards 403.5.1 and 309.4, respectively. (Id.) He also contends the barriers "relate to and impact Plaintiff's disability and denied Plaintiff full and equal access." (Id. at ¶ 12.) Plaintiff also alleges the identified barriers "are easily removed without much difficulty or expense . . . [or that] there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." (Id. at ¶ 13.) Plaintiff notes he "visits the geographical area where the Store is located on a regular basis two to four times per year, and has been visiting the geographical area for many years in the past"; that he "intends to continue visiting the geographical area where the Store is located on a regular basis at the rate of two to four times per year for the near future"; that he "has conducted business at the Store numerous times in the past and desires to conduct business there in the future . . . because it is reasonably priced and within Plaintiff's budgetary limits" and "[t]he style, price and location of the Store are convenient to Plaintiff when visiting or traveling in the geographical area where the Store is located. (Id. at ¶¶ 16–20.) Finally, Plaintiff states he "has a desire to revisit the Store during his regular visits to the geographical area where the Store is located but only if the Store is made accessible." (Id. at ¶ 21.)

Plaintiff asserts claims under the ADA and California's Unruh Civil Rights Act and Disabled Persons Act (DPA). (See generally id.) He requests an injunction requiring Defendant to close its store until the Store has fully complied with the ADA, his "costs and expenses and lawyer's fees should Plaintiff hire a lawyer," damages under California law for "$4,000 per violation [of the Unruh Act] per encounter," treble damages pursuant to California Civil Code § 3345(b), and at least $1,000 in monetary costs and damages "per violation per encounter" pursuant to the DPA. (Id. at ¶¶ 22, 26, 31–32.)

4

# III.

# DISCUSSION

### A.     Jurisdiction: Article III Standing

"A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution, Lujan, 504 U.S. at 561; standing is a 'core component' of that requirement." D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1036 (9th Cir. 2008) (citation omitted); see also Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477–78) ("This case-or-controversy requirement subsists through all stages of federal judicial proceedings.").

To establish standing, Plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable decision." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc) (citing Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)). Additionally, to establish standing for a claim of injunctive relief, as here,[4] Plaintiff "must demonstrate a 'real and immediate threat of repeated injury' in the future." Chapman, 631 F.3d at 946 (quoting Fortyune, 364 F.3d at 1081). An ADA plaintiff sufficiently demonstrates such threat of future injury "when he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." Id. at 948.

In sum, the Ninth Circuit has held "an ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." Id. at 944, 949.

### 1.     Deterrence

"Title III explicitly provides that it does not require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply with the ADA.") (quotation omitted)).  Pickern v. Holiday Quality Foods Inc., 293 F.3d

---

[4] Only injunctive relief is available under Title III of the ADA, Barnes v. Marriott Hotel Servs., Inc., No. 15-cv-01409-HRL, 2017 WL 635474, at *7 (N.D. Cal. Feb. 16, 2017); therefore, Plaintiff must establish this additional element.

1133, 1136 (9th Cir. 2002) (quoting Teamsters v. U.S., 431 U.S. 324, 366 (1977) (internal quotations omitted)). Rather, "a plaintiff who is deterred from patronizing a store suffers the ongoing 'actual injury' of lack of access to the store." Chapman, 631 F.3d at 950 (citing Pickern, 293 F.3d at 1138). Thus, an ADA plaintiff may establish standing based on deterrence if he "demonstrate[s] that he would return but for the barrier."[5] Feezor v. Sears, Roebuck & Co., 608 Fed. App'x 476, 477 (9th Cir. 2015); see also Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1041 (2008) ("Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent.").

However, conclusory allegations of deterrence are insufficient. Feezor, 608 F. App'x at 477; Chapman, 631 F.3d at 954 (commenting on the essential elements of Article III standing, "While we are mindful of the generous pleading standards that apply to civil rights plaintiffs, a liberal interpretation of a . . . civil rights complaint may not supply essential elements of the claim that were not initially pled.") (internal quotations and citation omitted); see also Strojnik v. Bakersfield Convention Hotel I, LLC, 436 F. Supp. 3d 1332, 1343 (E.D. Cal. 2020) ("Plaintiff's implicit suggestion that CREEC [Civ. Rts. Educ. & Enf't Ctr. v. Hosp. Props. Tr., 867 F.3d 1093 (9th Cir. 2017)] somehow undid decades of Ninth Circuit and Supreme Court precedents to hold for the first time that conclusory allegations of one's intent to return and deterrence from returning to a place to be sufficient to establish imminent future harm is neither logical nor rooted in the four corners of the case."); Gastelum v. Canyon Hosp. LLC, No. CV-17-02792-PHX-GMS, 2018 WL 2388047, at *6 (D. Ariz. May 25, 2018) (similarly stating that CREEC "did not relax the requirement that the Plaintiff demonstrate real and immediate threat of repeated injury by showing a legitimate intent to visit again the public accommodation in question."). Where the

---

[5] The Court notes the significant similarities in the requirements for an ADA plaintiff to establish he either "would return" but for the barriers, or that he "will return" under the deterrence element and the intent to return element, respectively. Indeed, numerous courts have addressed both elements together in light of their similarities. See, e.g., Bakersfield Convention Hotel I, LLC, 436 F. Supp. 3d at 1341 & 1345 n.3 ("Mere conclusory assertions that an ADA plaintiff intends to return and is deterred from returning to a place are insufficient."); Barnes, 2017 WL 635474, at *7 ("[T]he injury alleged by the plaintiff—whether based on an intent to return or deterrence—cannot be based only on conclusory statements unsupported by specific facts."). To the extent the Court's evaluation of the deterrence and intent to return elements in the instant complaint similarly overlaps, the Court will also address such points concurrently herein.

6

1  plaintiff is "indifferent to returning" or if his "alleged intent to return is not genuine," no
2  imminent threat exists. Chapman, 631 F.3d at 953; see also Ervine v. Desert View Reg'l Med.
3  Ctr. Holdings, LLC, 753 F.3d 862, 868 (9th Cir. 2014) (finding that ADA plaintiff who
4  encountered a barrier at a hospital but alleged no reason or intent to return to the hospital in the
5  future lacked standing for injunctive relief). Similarly, a general intent to return to a public
6  accommodation is "insufficient to confer standing in an action for injunctive relief." Molski v.
7  Kahn Winery (Kahn Winery), 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005) (citing Lujan, 504
8  U.S. at 564).

9  With respect to the elements of deterrence and intent to return, Plaintiff relies on the
10  following assertions:

> Plaintiff visits the geographical area where the Store is located on a regular basis two to four times per year, and has been visiting the geographical area for many years in the past[;] intends to continue visiting the geographical area where the Store is located[;] has conducted business at the Store numerous times in the past and desires to conduct business there in the future . . . because it is reasonably priced and within Plaintiff's budgetary limits [and t]he style, price and location of the Store are convenient to Plaintiff when visiting or traveling in the geographical area where the Store is located[; and] Plaintiff has a desire to revisit the Store during his regular visits to the geographical area where the Store is located but only if the Store is made accessible . . ."

18  (Compl. ¶¶ 16–21.) These are conclusions couched as factual allegations that do not rise above
19  the speculative level. Twombly, 550 U.S. at 555.

20  For example, Plaintiff never describes what kind of store Defendant owns; Plaintiff states
21  he likes the prices of the items in Five Below, but he does not describe what kinds of "goods or
22  services" are offered there, or what such goods or services he has availed himself of in the past or
23  the intended future. Nor does Plaintiff provide any reason whatsoever as to why he must avail
24  himself of unspecified goods and services at the Five Below located in Fresno, California, when
25  several other Five Below stores are located in much closer proximity to Plaintiff's residence in
26  Casa Grande, Arizona.[6] Nor does Plaintiff provide any reason for his unspecified two to four

---

[6] See, e.g., https://www.google.com (last visited Jul. 8, 2022) (maps search for Five Below near Plaintiff's address in Casa Grande, Arizona revealing at least sixteen other Five Below stores within a 100-mile radius of Plaintiff's residence).

7

annual trips to the "geographical area." Nor does Plaintiff identify what "business" he wishes to conduct at the Store. This complete lack of factual detail is insufficient to support Plaintiff's conclusory statement that he desires to revisit the Five Below located in Fresno, California in order to "conduct business there in the future."

Similarly, other than a single paragraph in the complaint in which Plaintiff identifies the address of Defendant Five Below, Inc.'s "public accommodation," Plaintiff does not identify with any particularity what "geographical area" he is referring to. This is problematic because it is unclear whether Plaintiff is referring to, for example, the "geographical area" of Fresno, the greater Central California region, the specific "geographical area" located within the jurisdiction of the Eastern District of California, the entire state of California, or the west coast, in general. See, e.g., Strojnik v. Four Sisters Inns, Inc., No. 2:19-CV-02991-ODW (JEMx), 2019 WL 6700939, at *4 (C.D. Cal. Dec. 9, 2019) (plaintiff's "regular" visits to California but not the Santa Monica area in particular was insufficient to support an intent to return to the defendant's hotel); Brooke v. CSP Hosp. LLC, No. EDCV 20-2202 JGB (SHKx), 2021 WL 401990, at *5 (C.D. Cal. Feb. 2, 2021) ("Plaintiff fails to allege the frequency of her travel or 'specific ties' to the Desert Cities area in general, or the Hotel in particular.") (citing Johnson v. Overlook at Blue Ravine, LLC, No. 2:10-CV-02387 JAM-DAD, 2012 WL 2993890, at *3 (E.D. Cal. Jul. 20, 2012)).

It is also problematic that Plaintiff states he has visited the Store in the past, but does not identify any such instances or provide any reason for his past or intended future visits. Moreover, Plaintiff alleges he intends to visit the "geographical area" in which the Store is located "two to four times" within the year, but otherwise provides no specific date or timeframe. See CSP Hosp. LLC, 2021 WL 401990, at *4 (plaintiff's purported intent to re-visit defendant's hotel "later this year" was too speculative to establish intent to return). Perhaps most importantly, Plaintiff alleges—again, only vaguely—his intent to return to the "geographical area" in which the Store is located, but he does not allege that he intends to actually visit *the Store* during one of those future trips. Indeed, the Ninth Circuit, applying the standard set forth by the Supreme Court in Lujan, explained that mere conclusory assertions that an ADA plaintiff intends to return to a place are insufficient:

> A plaintiff's "profession of an 'inten[t]' to return to the places [he] had visited before" is not sufficient to establish standing because "[s]uch 'some day' intentions — without any description of concrete plans, or indeed even any specification of *when* the some day will be — do not support a finding of the 'actual or imminent' injury that our cases require.

Feezor, 608 F. App'x at 477 (quoting Lujan, 504 U.S. at 564) (alteration and emphasis in original).

In sum, Plaintiff's conclusory allegations are insufficient to establish deterrence.

2.  Injury-In-Fact Coupled with an Intent to Return

   a.  **Injury-In-Fact**

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.' " Lujan, 504 U.S. at 560 (citations omitted). A "particularized" injury is one that " 'affect[s] the plaintiff in a personal and individual way.' " Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, 504 U.S. at 560 n.1). A "concrete" injury "must actually exist" and must be "real, and not abstract." Id. at 340.

An ADA plaintiff has suffered an injury-in-fact when he "encounter[s] a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability." Chapman, 631 F.3d at 944. More specifically, he must show that he "personally suffered discrimination as defined by the ADA as to encountered barriers on account of his disability." See Id. Discrimination under the ADA is defined to include a failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Thus, where the plaintiff seeks to establish discrimination based on an architectural barrier, he "must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); see also Chapman, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a)); Doran, 524 F.3d at 1041; Wyatt v. Ralphs Grocery Co., 65 Fed. App'x 589, 590 (9th Cir. 2003).

///

i.  Architectural Barriers

The ADA Accessibility Guidelines ("ADAAG")[7] "establish[ ] the technical standards required for 'full and equal enjoyment.' " Chapman, 631 F.3d at 945 (citing 28 C.F.R. § 36.406(a); 28 C.F.R. Pt. 36, App. A; Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1024–25 (9th Cir. 2008) (describing the ADA's regulatory framework), cert. denied, 555 U.S. 1208 (2009)).

As noted, Plaintiff identifies two purported barriers at the Store: (1) the Store's clear width of accessible routes was less than 36" between displays of merchandise, in violation of 403.5.1;[8] and (2) the operable part of the public restroom door required the twisting of the wrist, in violation of 309.4.[9] (Compl. ¶ 11.) Accepting Plaintiff's allegations as true, the identified areas in the Store are in violation of the ADAAG and are therefore not "readily accessible," but constitute architectural barriers. See Chapman, 631 F.3d at 945–46.

ii.  Readily Achievable Removal of Barriers

Plaintiff has alleged that the barriers are readily removable. At this stage of the litigation and the Court's facial review of the complaint, the Court finds this element is sufficiently met.

iii.  Personal Injury Due to Particular Disability

As the Ninth Circuit has commented, while "the ADAAG's requirements . . . are thorough, . . . its purpose is 'sweeping,' . . . and its mandate 'comprehensive,' . . . the ADA's

---

[7] Congress entrusted the Attorney General with promulgating the implementing regulations for Title III. Fortyune, 364 F.3d at 1080 (citing 42 U.S.C. § 12186(b)). The Attorney General adopted the ADAAG as the "Standards for Accessible Design," as they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities. Id. (citing 28 C.F.R. Pt. 36, App. A). The "1991 Standards" have been republished as Appendix D to 28 C.F.R. part 36. The term "2004 ADAAG" refers to the regulations codified at 36 C.F.R. 1191, App. B and D. "The term '2010 Standards' refers to the 2010 ADA Standards for Accessible Design, which consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR part. 36." 28 C.F.R. 1191 Pt. 36, App. A.

[8] Chapter 4 of the ADAAG pertains to "Accessible Routes." Section 403 pertains to walking surfaces; section 403.5.1, specifically, pertains to "Clear Width" accessible routes and provides: "Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches (915 mm) minimum." However, an exception provides that the clear width "shall be permitted to be reduced to 32 inches (815 mm) minimum for a length of 24 inches (610 mm) maximum provided that reduced width segments are separated by segments that are 48 inches (1220 mm) long minimum and 36 inches (915 mm) wide minimum. Based on the diagrams included in this section, it appears these regulations pertain to accessibility for persons using wheelchairs.

[9] Chapter 3 of the ADAAG pertains to "Building Blocks." Section 309.4 of the ADAAG requires "*Operable parts* shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate *operable parts* shall be 5 pounds . . . maximum." (emphasis in original).

reach is not unlimited." Chapman, 631 F.3d at 945–46 (internal citations omitted). As noted, a barrier violating the ADAAG's standards will only support an ADA claim "so long as [the plaintiff's] suit is limited to barriers related to that person's particular disability." Id. at 947. Accordingly, a plaintiff "lacks standing if . . . the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." Id. at 953.

Here, the Court cannot conclude Plaintiff has alleged facts sufficient to meet this requirement. Plaintiff alleges, in wholly conclusory fashion, that the barriers "relate to and impact Plaintiff's disability and denied Plaintiff full and equal access." (Compl. ¶ 12.) But Plaintiff does not allege how such barriers relate to his disability. For example, Plaintiff indicates he may use either a wheelchair or a prosthetic leg and a cane to ambulate at the various public establishments he visits. Certainly, the ADAAG violations appear to pertain to accessibility standards for a person in a wheelchair. But Plaintiff does not indicate which accommodation he was utilizing on January 26, 2022, when he visited Defendant's Store; therefore, Plaintiff has not established that the identified barriers actually affected him due to his disability.

Specifically regarding the alleged bathroom door barrier, Plaintiff does not allege any facts linking this barrier to his particular disability. That is, Plaintiff does not explain why he is unable to twist open a bathroom door while ambulating in a wheelchair or with his prosthetic leg; nor does Plaintiff allege any facts showing that he attempted to utilize the bathroom while availing himself of the goods and services at the Store.

Simply put, without more, Plaintiff's conclusory allegations are insufficient to establish the identified barriers related to his particular disability. Chapman, 631 F.3d at 947.

**b.  Intent to Return**

Finally, the Court finds Plaintiff has failed to allege an intent to return to the Store. As noted, an ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to re-encounter a discriminatory architectural barrier. Id. at 950; see also Ervine, 753 F.3d at 867 (internal citation omitted); Fortyune, 364 F.3d at 1081; O'Shea v. Littleton, 414 U.S. 488, 496 (1974); City of L.A. v. Lyons, 461 U.S. 95, 111 (1983). However, as previously noted with respect to the element of deterrence,

a "general intent to return" to a public accommodation is insufficient, as are allegations demonstrating "indifference" to returning, or an intent to return that is "not genuine." Kahn Winery, 405 F. Supp. 2d at 1164; Chapman, 631 F.3d at 953.

Particularly with respect to determining whether a plaintiff's likelihood of returning to a defendant's place of public accommodation is sufficient to confer standing, courts generally consider four factors: (1) the proximity of the place of public accommodation to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definitiveness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the defendant. Harris v. Del Taco, 396 F. Supp. 2d 1107, 1113, (C.D. Cal. 2005) (citing Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)); see also Crandall v. Starbucks Corp., 249 F. Supp. 3d 1087, 1106 (N.D. Cal. 2017).

The first factor does not support intent to return: Plaintiff's residence in Casa Grande, Arizona is approximately 647 miles (an approximately ten-hour drive) away from Defendant's Five Below store in Fresno, California. The second, third, and fourth factors are based on the same vague and conclusory allegations discussed *supra*, and are insufficient to establish intent to return for the same reasons. For all of these reasons, the Court finds Plaintiff fails to allege sufficient facts to establish an intent to return in support of his ADA claim. Chapman, 631 F.3d at 953.

Because Plaintiff fails to sufficiently allege either deterrence or "injury-in-fact coupled with an intent to return," he lacks Article III standing and this Court lacks jurisdiction over the action. This deficiency warrants dismissal. See Fed. R. Civ. P. 12(h)(3); Arbaugh, 546 U.S. at 514; Valdez, 372 F.3d at 1116; see also Langer v. YM Holdings, LLC, No. 18-CV-1114 JLS (KSC), 2020 WL 3498165, at *4 (S.D. Cal. Jun. 29, 2020) (dismissing ADA complaint for lack of subject-matter jurisdiction premised on lack of standing).

B.  **State Law Claims**

Having found that Plaintiff lacks standing to pursue his ADA claim, which is Plaintiff's sole federal law claim, the only claims remaining are Plaintiff's state law claims. The Court typically has discretion to refuse to exercise supplemental jurisdiction over state claims when all

federal claims have been dismissed. See 28 U.S.C. § 1367(c)(3). Indeed, the Ninth Circuit has stated that "state law claims 'should' be dismissed if federal claims are dismissed before trial." Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)) (emphasis omitted).

However, where, as here, a district court "dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims." Herman Fam. Revocable Tr. v. Teddy Bear, 254 F.3d 802, 806 (9th Cir. 2001). In light of this controlling authority, Plaintiff's remaining state law claims must also be dismissed.[10]

---

[10] Nevertheless, the Court notes that, even if it had jurisdiction over Plaintiff's ADA claim, it would likely decline (or order Plaintiff to show cause why it should not decline) to retain supplemental jurisdiction over Plaintiff's remaining state law claims, as exercising supplemental jurisdiction over Plaintiff's Unruh Act and DPA claims in this case "would not further the interest of judicial economy, convenience, fairness and comity." See Johnson v. Techbusiness Res., LLC, No. 20-cv-06048-BLF, 2020 WL 7013596, at *3 (N.D. Cal. Nov. 28, 2020) (citations omitted). Such a finding is consistent with the growing trend amongst California district courts to consider the state procedural requirements in ADA cases (similar to the instant matter) as a basis for declining to exert supplemental jurisdiction over the plaintiff's Unruh and other state law claims. See, e.g., Brooke v. Suites LP, No. 3:20-cv-01217-H-AHG, 2020 WL 6149963, at *6 (S.D. Cal. Oct. 19, 2020) (finding plaintiff sufficiently pled ADA claim but declining to exercise supplemental jurisdiction over Unruh Act claim "because it substantially predominates over [the plaintiff's] federal claim under the ADA and exceptional circumstances favor dismissal, including the Court's interests in comity and discouraging forum-shopping."); Brooke v. Tides Hosp. LLC, No. 8:21-cv-00755-JLS-JDE (C.D. Cal. Jun. 4, 2021) (order to show cause why the court should not decline to exercise supplemental jurisdiction over plaintiff's Unruh Act claim); Marquez v. KBMS Hosp. Corp., 492 F. Supp. 3d 1058 (C.D. Cal. 2020) (following *sua sponte* order to show cause why court should not decline to exercise supplemental jurisdiction over plaintiff's Unruh claim, dismissing Unruh claim without prejudice to refiling in state court and retaining jurisdiction over ADA claim only); Whitaker v. Mac, 411 F. Supp. 3d 1108 (C.D. Cal. 2019) (denying defendant's motion to dismiss plaintiff's ADA claim but granting defendant's request to decline to exercise supplemental jurisdiction over plaintiff's Unruh claim); Barnes, 2017 WL 635474, at *13 (declining to exercise supplemental jurisdiction over remaining state law claim after dismissing ADA claim for lack of standing); Garcia v. Thunderbird Lodge, Sacramento, LLC, No. 2:20-cv-02161-MCE-CKD, 2021 WL 4443179, at *2 (E.D. Cal. Sept. 28, 2021) (declining to exercise supplemental jurisdiction over Unruh Act claim after dismissing the parallel ADA claim); Langer v. Kiser, 516 F. Supp. 3d 1066 (S.D. Cal. 2021) (entering judgment in defendant's favor after bench trial on ADA claim, and declining to retain supplemental jurisdiction over plaintiff's Unruh claim based on compelling interests of comity and discouraging forum shopping). More specifically, California Code of Civil Procedure § 425.55(b) defines a "high-frequency litigant" as a plaintiff or attorney who has filed 10 or more complaints alleging a construction-related accessibility violation that includes a claim under the Unruh Act within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation, and requires that "additional safeguards apply so as to ensure that the claims are warranted." "Additional safeguards" required of such "high-frequency litigants" include: identifying the number of complaints alleging a construction-related accessibility claim that the high-frequency litigant has filed during the last 12 months prior to the filing of the complaint; identifying the reason the individual was in the geographic area of the defendant's business; identifying the reason why the individual desired access to the defendant's business, including the specific commercial, business, personal, social leisure, recreational (or other) purpose; verifying the complaint; and paying a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees. Cal. Code Civ. P. § 425.50; Cal. Gov't Code § 70616.5. The legislature justified these additional requirements for "high-frequency litigants" on the express basis that "more than one-half . . . of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms. . . . Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate

**C.     Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

On this record, the Court cannot rule out the possibility that Plaintiff can plausibly allege facts supporting Article III standing if given leave to amend. For this reason, he may amend his complaint to plead specific facts to address the deficiencies described in this order. Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Absent Court approval, Plaintiff's first amended complaint must be "complete in itself without reference to the prior or superseded pleading." E.D. Cal. L.R. 220. "If [Plaintiff] does not take advantage of the opportunity to fix his complaint, [the Court] may convert the dismissal of the complaint into dismissal of the entire action."). Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005).

**IV.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds Plaintiff has failed to establish Article III standing exists; therefore, the Court lacks jurisdiction over the instant matter.

---

complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation. This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act . . . and the federal Americans with Disability Act of 1990." Cal. Code Civ. P. § 425.55(a)(2). Indeed, the Court notes that it recently cautioned Plaintiff, in a different accessibility case which Plaintiff brought before this Court, that it was inclined to require him to provide a sound basis for retaining supplemental jurisdiction over his state claims, should the case proceed on the merits. See Gastelum v. Central Valley Hosp., LLC, No. 21-cv-01079-JLT-SAB, ECF No. 25 at 6 n.3 (E.D. Cal. Jun. 9, 2022).

14

Accordingly, IT IS HEREBY ORDERED that:

1. The complaint (ECF No. 1) is DISMISSED in its entirety as frivolous due to lack of subject-matter jurisdiction;
2. Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order **no later than August 22, 2022**;
3. The first amended complaint, including attachments, shall not exceed twenty-five (25) pages in length; and
4. If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to a District Judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated:  **July 11, 2022**

UNITED STATES MAGISTRATE JUDGE