1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

11

FERNANDO GASTELUM,

12              Plaintiff,

13        v.

14  FIVE BELOW, INC.,

15              Defendant.

16
17
18
19

Case No.  1:22-cv-00825-AWI-SAB

FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM

(ECF No. 4)

**DEADLINE:  TWENTY-ONE DAYS**

20

## I.

21

## INTRODUCTION

22        Plaintiff Fernando Gastelum ("Plaintiff") is proceeding *pro se*[1] in this accessibility

23  litigation pursuant to the Americans with Disabilities Act (ADA) and state law against Defendant

24  Five Below, Inc. ("Defendant" or "Five Below").  (ECF No. 1.)  The Court *sua sponte* screened

25  the complaint pursuant to its independent obligation under Federal Rule of Civil Procedure

26  ("Rule") 12(h)(3) to determine whether it has subject-matter jurisdiction over this matter on July

27  12, 2022.  (ECF No. 2.)  Finding the complaint did not allege facts sufficient to establish subject-

28

---

[1] The Court notes Plaintiff paid the filing fee for this action on July 5, 2022.

1

1   matter jurisdiction, the Court dismissed the complaint with leave to amend. (Id.) Currently

2   before the Court for screening is Plaintiff's first amended complaint. (ECF No. 4.) For the

3   reasons discussed herein, the Court finds it lacks subject-matter jurisdiction and recommends

4   dismissal.

5   ## II.

6   ## LEGAL AUTHORITY

7   The Court has an independent obligation to determine whether it has subject-matter

8   jurisdiction. See Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011) ("[F]ederal

9   courts have an independent obligation to ensure that they do not exceed the scope of their

10  jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties

11  either overlook or elect not to press."); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 514

12  (2006) (noting that "subject-matter jurisdiction, because it involves a court's power to hear a case,

13  can never be forfeited or waived"); Wilson v. Lynch, 835 F.3d 1083, 1091 (9th Cir. 2016).

14  Consequently, "[f]ederal courts are required sua sponte to examine jurisdictional issues such as

15  standing." D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1035 (9th Cir. 2008);

16  Bernhardt v. Cnty. of L.A., 279 F.3d 862, 868 (9th Cir. 2002) (internal quotation marks omitted

17  and citations omitted); accord U.S. v. Hays, 515 U.S. 737, 742 (1995).

18  The existence of Article III standing is not subject to waiver. Hays, 515 U.S. at

19  742. Rather, it must be demonstrated "at the successive stages of the litigation." Lujan v. Defs.

20  of Wildlife, 504 U.S. 555, 561 (1992). Finally, as set forth by Rule 12(h)(3), "[i]f the court

21  determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

22  action."[2] Fed. R. Civ. P. 12(h)(3); see also Arbaugh, 546 U.S. at 514 ("when a federal court

23  concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its

24  entirety"); see also Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1116 (9th Cir. 2004) (the court is

25  

26  [2] The Court further notes that, "[w]hen a court does not have jurisdiction to hear an action, the claim is considered frivolous," Gastelum v. HEES II (HEES II), No. 21-CV-1337 JLS (RBB), 2022 WL 255426, at *1 (S.D. Cal. Jan. 27,

27  2022) (quoting Johnson v. E. Band Cherokee Nation, 718 F. Supp. 6 (N.D.N.Y. 1989)), and the "purpose of [screening] is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." Nordstrom v. Ryan, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (referring to screening requirements pursuant to 28 U.S.C.

28  § 1915(e)(2)) (citations and internal quotations omitted).

1   obligated to evaluate its subject matter jurisdiction in each case and to dismiss a case when such
2   jurisdiction is lacking).

3       Where, as here, the Court evaluates the jurisdictional issue facially, the court must accept
4   the complaint's factual allegations as true.  Comm. for Immigrant Rts. of Sonoma Cnty. v. Cnty.
5   of Sonoma, 644 F. Supp. 2d 1177, 1189 (N.D. Cal. 2009); see also Wilhelm v. Rotman, 680 F.3d
6   1113, 1121 (9th Cir. 2012) (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)) ("where
7   the petitioner is *pro se*, particularly in civil rights cases, [courts should] construe the pleadings
8   liberally and … afford the petitioner the benefit of any doubt."); U.S. v. Qazi, 975 F.3d 989, 992–
9   93 (9th Cir. 2020) ("It is an entrenched principle that *pro se* filings however inartfully pleaded are
10  held to less stringent standards than formal pleadings drafted by lawyers.") (citations and internal
11  quotations omitted).  Nonetheless, while factual allegations are accepted as true, legal conclusions
12  are not.  Bell Atlantic Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007).  Leave to amend
13  may be granted to the extent that the deficiencies of the complaint can be cured by amendment.
14  Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

15                                      **III.**

16                         **COMPLAINT ALLEGATIONS**

17      The Court accepts Plaintiff's factual allegations in the complaint as true only for the
18  purpose of the instant *sua sponte* screening order.

19      Plaintiff alleges that he is a senior citizen and is missing a leg; sometimes he uses a
20  wheelchair for mobility, whereas at other times, he uses a prosthetic leg and a cane.  (1st Am.
21  Compl. ("FAC") ¶¶ 1, 3–4, ECF No. 4.)

22      Defendant Five Below owns two "public accommodations," located at (1) 6467 Riverside
23  Drive, Suite 112, Fresno, California 93722 (the "Riverside Store"); and (2) at 7628 North
24  Blackstone Ave., Fresno, California 93720 (the "Blackstone Store").  (Id. at ¶ 5.)  Defendant's
25  stores are specialty discount stores that sell products that are less than $5, plus a small assortment
26  of products from $6 to $25, and create a pleasant flea market-type atmosphere which Plaintiff
27  enjoys.  (Id. at ¶¶ 26–27.)

28      Plaintiff resides in Casa Grande, Arizona; however, he has family in California (Shafter,

Bakersfield, Fresno, San Jose, Modesto, and Merced).  (Id. at ¶¶ 2, 24.)  Plaintiff stops in the Fresno area at least 2–4 times per year to lodge, eat or attend a 49ers Empire SoCal barbeque, or on his way to Sacramento, Stockton, and/or Northern California.  (Id. at ¶ 31.)  Most recently, Plaintiff visited Fresno on July 2, 2021, January 25–26, 2022, May 17–19, 2022, and August 10, 2022.  (Id. at ¶ 32.)  Plaintiff alleges that when he visits Fresno, he "visits various big box stores, including Five Below, to shop there and, in part, to determine whether they are compliant with accessibility laws."  (Id. at ¶ 33.)

Plaintiff alleges he visited Defendant's Riverside Store on January 26, 2022, with the intention to avail himself of their goods or services.  (Id. at ¶ 34.)  A Five Below receipt dated January 26, 2022, indicates Plaintiff purchased a "BT TWS Classic AST B" for eight dollars.  (Id. at 8.)  During that trip, Plaintiff discovered the Riverside Store was not compliant with either the ADA or state law.  (Id. at ¶ 35.)  Specifically, (1) the store's clear width of accessible routes was less than 36" between displays of merchandise, in violation of accessibility standards at 403.5.1., and purportedly making it more difficult for Plaintiff to shop between displays of merchandise and access the merchandise with his wheelchair; (2) the bathroom door requires the push-pull force greater than five pounds, in violation of accessibility standards at 309.4.2, and making it more difficult for Plaintiff to open the door from his wheelchair "because it does not permit Plaintiff to push open the door with his upper body as most fully abled persons do"; and (3) the operable part of the public restroom door required the twisting of the wrist, in violation of accessibility standards at 309.4, and making it more difficult for Plaintiff to open the door, as it "substantially limits Plaintiff's ability to twist his elbow to open the door."  (Id. at ¶¶ 35(a)–(b), 42(a)–(b), 43.)  Plaintiff alleges he advised Defendant's President, Joel Anderson, that the Riverside Store was not accessible and requested Defendant use best efforts to remediate the barriers, but Mr. Anderson did not respond to Plaintiff.  (Id. at ¶ 36.)

After initiating the instant lawsuit (ECF No. 1), Plaintiff visited the Riverside Store again on August 10, 2022, "to conduct business there and to determine whether the Riverside Store [had attempted to remove the identified barriers]"; it had not.  (FAC ¶¶ 38–40.)  Another Five Below receipt with no date visible indicates Plaintiff purchased a "stylus 10-pack" for $5.25.  (Id. at 9.)

4

1    Plaintiff alleges he was denied full and equal access based on the same previously-identified
2    barriers.  (Id. at ¶ 40.)

3         That same day (August 10, 2022), Plaintiff also visited Defendant's Blackstone Store.[3]
4    (Id. at ¶ 41.)  An attached receipt with no visible date indicates Plaintiff purchased another two
5    pens, for a total of $8.25.  (Id. at 10.)  Plaintiff alleges that, during this visit, he discovered the
6    Blackstone Store was also not compliant with either the ADA or state law, and had the exact
7    same "barriers" as the Riverside Store.  (Id. at ¶¶ 42–43.)

8         Plaintiff contends the barriers "relate to and impact Plaintiff's disability and denied
9    Plaintiff full and equal access because Plaintiff uses a wheelchair, and the barriers directly relate
10   [to] wheelchair use …."  (Id. at ¶ 43.)  Plaintiff also alleges the identified barriers "are easily
11   removed without much difficulty or expense … For example, Defendant could simply space the
12   merchandise to permit access between the rows of merchandise.  Likewise, Defendant could
13   change the bathroom door operating hardware to the push-pull type and adjust the automatic
14   closing device to less than 5 lbs.  Moreover, there are numerous alternative accommodations that
15   could be made to provide a greater level of access if complete removal were not achievable."
16   (Id. at ¶ 44.)

17        The FAC asserts the following causes of action: (1) a new cause of action, titled "Federal
18   Pre-Emption of Unruh's 'Heightened' and 'Special Procedural Requirements Aimed at Limiting
19   Suits by [Disabled Individuals]' "; (2) Violations of the ADA; (3) Violations of California's
20   Unruh Act; and (4) Violations of the Disabled Persons Act.  (Id. at 12–18.)  In his prayer for relief
21   as to each cause of action, Plaintiff seeks: (1) a declaration that the Unruh Act's "heightened" and
22   "special procedural requirements aimed at limiting suits by [disabled individuals]" are "expressly,
23   field and conflict preempted by the ADA, and an injunction against California from enforcing
24   Unruh's "heightened" and "special procedural requirements aimed at limited suits by [disabled
25   individuals]"; (2) declaratory and injunctive relief against Defendant Five Below with respect to

26   _____
27   [3] The heading for this section of the FAC states "Plaintiff's Visit to the Blackstone Store on January 26, 2022 And
     His Intent to Return," which mimics a prior heading relating to the Riverside Store; however, it appears this is a cut
28   and paste typo as the main section heading and factual allegations indicate Plaintiff only visited the Blackstone Store
     on August 10.  (See id. at 7; id. at ¶¶ 39–41.)

its purported ADA violations, requiring Defendant to "remediate each and every inaccessible element in the stores that are [the] subject of this Verified Complaint; and … implement enforceable policies, practices, or procedures to afford goods, services, facilities, privileges, advantages, or accommodations to Plaintiff and others similarly situated pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302," as well as "costs and expenses and lawyer's fees should Plaintiff hire a lawyer"; (3) the same declaratory and injunctive relief with respect to the purported Unruh Act violations, plus $4,000 per Unruh violation, per encounter, treble damages pursuant to California Civil Code § 3345(b), and costs, expenses, "and lawyer's fees should Plaintiff hire a lawyer"; and (4) the same declaratory and injunctive relief with respect to the purported violations of the Disabled Persons Act as that sought under the ADA and Unruh Act, plus monetary damages of at least $1,000 (per violation, per encounter) pursuant to California Civil Code § 54.3, and costs, expenses, and fees "should Plaintiff hire a lawyer." (Id. at 12–17.)

**IV.**

**DISCUSSION**

### A.    Jurisdiction: Article III Standing/ADA Claim

"A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution, Lujan, 504 U.S. at 561; standing is a 'core component' of that requirement." D'Lil, 538 F.3d at 1036 (citation omitted); see also Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477–78) ("This case-or-controversy requirement subsists through all stages of federal judicial proceedings.").

To establish standing, Plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable decision." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (en banc) (citing Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)). Additionally, to establish standing for a claim of injunctive relief, as here,[4] Plaintiff

---

[4] Only injunctive relief is available under Title III of the ADA, Barnes v. Marriott Hotel Servs., Inc., No. 15-cv-01409-HRL, 2017 WL 635474, at *7 (N.D. Cal. Feb. 16, 2017); therefore, Plaintiff must establish this additional element.

"must demonstrate a 'real and immediate threat of repeated injury' in the future." Chapman, 631 F.3d at 946 (quoting Fortyune, 364 F.3d at 1081). An ADA plaintiff sufficiently demonstrates such threat of future injury "when he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." Id. at 948. Conversely, a plaintiff "lacks standing if he is indifferent to returning … or if his alleged intent to return is not genuine." Id. at 953. In sum, the Ninth Circuit has held "an ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." Id. at 944, 949.

1. Deterrence/Injury In Fact

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.' " Lujan, 504 U.S. at 560 (citations omitted). A "particularized" injury is one that " 'affect[s] the plaintiff in a personal and individual way.' " Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, 504 U.S. at 560 n.1). A "concrete" injury "must actually exist" and must be "real, and not abstract." Id. at 340.

An ADA plaintiff has suffered an injury-in-fact when he "encounter[s] a barrier that deprives him of full and equal enjoyment of the facility due to his particular disability." Chapman, 631 F.3d at 944. More specifically, he must show that he "personally suffered discrimination as defined by the ADA as to encountered barriers on account of his disability." See id. Discrimination under the ADA is defined to include a failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Thus, where the plaintiff seeks to establish discrimination based on an architectural barrier, he "must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." Parr v. L & L Drive-Inn Rest., 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000); see also Chapman, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a)); Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1041 (9th Cir. 2008); Wyatt v. Ralphs Grocery Co., 65 Fed. App'x 589, 590 (9th Cir. 2003).

In addition, under the "deterrent effect doctrine," the Ninth Circuit has recognized that

"[w]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury." Civ. Rts. Educ. & Enf't Ctr. v. Hosp. Props. Tr. (CREEC), 867 F.3d 1093, 1098–99 (9th Cir. 2017) (citing Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1135 (9th Cir. 2002).  Thus, "a plaintiff who is deterred from patronizing a store suffers the ongoing 'actual injury' of lack of access to the store." Chapman, 631 F.3d at 950 (citing Pickern, 293 F.3d at 1138).

      **a.**    **Architectural Barriers**

Congress entrusted the Attorney General with promulgating the implementing regulations for Title III.  Fortyune, 364 F.3d at 1080 (citing 42 U.S.C. § 12186(b)).  Congress provided that these implementing regulations must be consistent with the minimum guidelines issued by the Architectural and Transportation Barriers Compliance Board, which issued its final ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") in 1991.  Id. (citing 42 U.S.C. § 12186(c); 36 C.F.R. Pt. 1191, App. A).  The Attorney General adopted the ADAAG as the "Standards for Accessible Design," and they lay out the technical structural requirements of places of public accommodation and are applicable during the design, construction, and alteration of such facilities.  Id. (citing 28 C.F.R. Pt. 36, App. A).  "Whether a facility is 'readily accessible' is defined, in part, by the ADA Accessibility Guidelines." Chapman, 631 F.3d at 945 (citing 28 C.F.R. § 36.406(a); 28 C.F.R. Pt. 36, App. A; Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1024–25 (9th Cir. 2008) (describing the ADA's regulatory framework), cert. denied, 555 U.S. 1208 (2009)).

As noted, Plaintiff identifies three purported barriers at the Riverside Store, which are identical to the purported barriers he identified at the Blackstone Store: (1) the store's clear width of accessible routes was less than 36" between displays of merchandise, in violation of accessibility standards at 403.5.1.; (2) the bathroom door requires the push-pull force greater than five pounds, in violation of accessibility standards at 309.4.2; and (3) the operable part of the public restroom door required the twisting of the wrist, in violation of accessibility standards at 309.4.  (FAC ¶¶ 35(a)–(b), 43.)  Accepting Plaintiff's allegations as true, the identified areas in

the Store are in violation of the ADAAG and are therefore not "readily accessible," but constitute architectural barriers.  See Chapman, 631 F.3d at 945–46.

### b. Readily Achievable Removal of Barriers

Plaintiff has alleged that the barriers are readily removable.  At this stage of the litigation and the Court's facial review of the complaint, the Court finds this element is sufficiently met.

### c. Personal Injury Due to Particular Disability

As the Ninth Circuit has commented, while "the ADAAG's requirements … are thorough, … its purpose is 'sweeping,' … and its mandate 'comprehensive,' … the ADA's reach is not unlimited." Id. (internal citations omitted).  As noted, a barrier violating the ADAAG's standards will only support an ADA claim "so long as [the plaintiff's] suit is limited to barriers related to that person's particular disability." Id. at 947.  Accordingly, a plaintiff "lacks standing if … the barriers he seeks to enjoin do not pose a real and immediate threat to him due to his particular disability." Id. at 953.

Here, Plaintiff personally visited the Riverside and Blackstone Stores and has actual knowledge of the purported barriers.  Plaintiff has sufficiently alleged the stores' inadequate width of accessible routes presented a barrier specifically related to his disability, in that Plaintiff could not shop between displays of merchandise and access the merchandise with his wheelchair. (FAC  ¶¶  35(a)–(b), 42(a)–(b), 43.)  Similarly, regarding the alleged bathroom door barriers, Plaintiff alleges the push-pull force on the door makes it more difficult for Plaintiff to open the door from his wheelchair "because it does not permit Plaintiff to push open the door with his upper body as most fully abled persons do," and the door mechanism requiring the twisting of the wrist makes it more difficult for Plaintiff to open the door because it "substantially limits Plaintiff's ability to twist his elbow to open the door."  (Id.)  Plaintiff also alleged his belief, based on attempting to contact Defendant's President, that no remediations are imminent.  Thus, Plaintiff has sufficiently alleged injury in fact.

### 2. Threat of Future Injury (Intent to Return)

Particularly with respect to determining whether a plaintiff's likelihood of returning to a defendant's place of public accommodation is sufficient to confer standing, courts generally

consider four factors: (1) the proximity of the place of public accommodation to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definitiveness of the plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the defendant.  Harris v. Del Taco, 396 F. Supp. 2d 1107, 1113, (C.D. Cal. 2005) (citing Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)); see also Crandall v. Starbucks Corp., 249 F. Supp. 3d 1087, 1106 (N.D. Cal. 2017).

However, conclusory allegations are insufficient.  Feezor v. Sears, Roebuck & Co. (Feezor), 608 Fed. App'x 476, 477 (9th Cir. 2015); Chapman, 631 F.3d at 954 (commenting on the essential elements of Article III standing, "While we are mindful of the generous pleading standards that apply to civil rights plaintiffs, a liberal interpretation of a … civil rights complaint may not supply essential elements of the claim that were not initially pled.") (internal quotations and citation omitted); see also Strojnik v. Bakersfield Convention Hotel I, LLC, 436 F. Supp. 3d 1332, 1343 (E.D. Cal. 2020) ("Plaintiff's implicit suggestion that CREEC somehow undid decades of Ninth Circuit and Supreme Court precedents to hold for the first time that conclusory allegations of one's intent to return and deterrence from returning to a place to be sufficient to establish imminent future harm is neither logical nor rooted in the four corners of the case."); Gastelum v. Canyon Hosp. LLC (Canyon Hosp.), No. CV-17-02792-PHX-GMS, 2018 WL 2388047, at *6 (D. Ariz. May 25, 2018) (similarly stating that CREEC "did not relax the requirement that the Plaintiff demonstrate real and immediate threat of repeated injury by showing a legitimate intent to visit again the public accommodation in question.").  Where the plaintiff is "indifferent to returning" or if his "alleged intent to return is not genuine," no imminent threat exists.  Chapman, 631 F.3d at 953; see also Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 868 (9th Cir. 2014) (finding that ADA plaintiff who encountered a barrier at a hospital but alleged no reason or intent to return to the hospital in the future lacked standing for injunctive relief).   Similarly, a general intent to return to a public accommodation is "insufficient to confer standing in an action for injunctive relief."  Molski v. Kahn Winery, 405 F. Supp. 2d 1160, 1164 (C.D. Cal. 2005) (citing Lujan, 504 U.S. at 564).

The Court previously found the complaint asserted only conclusory allegations relating to

1  intent to return.  (ECF No. 2 at 7–9, 11–12.)  The FAC does not appear to cure these deficiencies

2  because the second and fourth aforementioned factors somewhat support a finding of intent to

3  return; however, the first and third factors do not:

4        Plaintiff's residence in Casa Grande, Arizona is approximately 647 miles (approximately

5  a ten-hour-drive) away from Defendant's Five Below stores in Fresno, California.  Plaintiff

6  explains that, while he lives in Arizona (because he cannot afford to live in California), he has

7  family that lives throughout California—including Bakersfield, Fresno, San Jose, Modesto, and

8  Merced.  Plaintiff alleges he visits California for his friends, family, the Pacific Coast, and the

9  chapters of the 49ers Faithful Empire Club; he alleges he has visited the Fresno area "30–40 times

10  in the past … stop[ping] in the Fresno area at least 2–4 times per year to lodge, eat or attend a

11  49ers Empire SoCal barbeque, or on his way to Sacramento, Stockton, and Northern California."

12  (FAC ¶¶ 24–25, 30–31.)  Plaintiff also alleges he has patronized Defendant's Riverside and

13  Blackstone store locations in the past, on January 26 and August 10, 2022.  (Id. at 7; id. at ¶¶ 34,

14  38, 39, 41.)

15        At most, the Court finds Plaintiff's factual allegations may demonstrate he has a reason to

16  return to the Fresno area; however, they do not establish a "genuine" intent to return to either the

17  Riverside Store or the Blackstone Store, Chapman, 631 F.3d at 953, nor do the allegations

18  establish deterrence.  Rather, Plaintiff alleges the following:

19              Plaintiff intends to return to Fresno in January of 2023, and
              specifically intends to return to the Five Below Stores as
20            documented above … In the meantime, however[,] Plaintiff is
              deterred from returning to the Five [B]elow Stores until he has been
21            advised that the violations have been remediated fully and
              completely and that each store is fully accessible to Plaintiff … As
22            a result, Plaintiff and others similarly situated are deterred from
              visiting any Five Below store because they know that Five Below
23            lacks reasonable modifications in policies, practices, or procedures,
              when such modifications are necessary to afford goods, services,
24            facilities, privileges, advantages, or accommodations to individuals
              with disabilities, unless the accommodation would work a
25            fundamental alteration of those services and facilities….[5]

26  (FAC ¶¶ 56–57.)  These deterrence allegations are conclusory.

27  ---
   [5] Hereafter, Plaintiff includes a sentence about an inaccessible Starbucks counter, which appears to be an unfortunate
28  cut-and-paste typo not intended to apply to Plaintiff's instant litigation against Five Below, and the Court shall
   disregard it as such.

1    Moreover, the allegations do not indicate a specific date or timeframe for which Plaintiff

2    intends to again visit either Fresno store in the future.  Indeed, this Court has held that a plan to

3    revisit an establishment "sometime" within a certain month is too vague and generalized to

4    establish a legitimate intent to return.  See Brooke v. Sai Ashish Inc. (Sai Ashish), No. 1:21-cv-

5    00967-AWI-SAB, 2021 WL 4804220, at *10 (E.D. Cal. Oct. 14, 2021), report and

6    recommendation adopted, No. 1:21-cv-00967-AWI-SAB, 2022 WL 446676 (E.D. Cal. Feb. 14,

7    2022) (plaintiff's intent to return to defendant's establishment sometime "in August 2021" was

8    too vague to establish intent to return); see also Brooke v. CSP Hosp. LLC, No. EDCV 20-2202

9    JGB (SHKx), 2021 WL 401990, at *4 (C.D. Cal. Feb. 2, 2021) (plaintiff's purported intent to

10   revisit defendant's hotel "later this year" was too speculative to establish intent to return); see also

11   Feezor, 608 Fed. App'x at 477 (quoting Lujan, 504 U.S. at 564) ("A plaintiff's "profession of an

12   'inten[t]' to return to the places [he] had visited before" is not sufficient to establish standing

13   because "[s]uch 'some day' intentions—without any description of concrete plans, or indeed even

14   any specification of *when* the some day will be—do not support a finding of the 'actual or

15   imminent' injury that our cases require.") (alteration and emphasis in original).

16   Furthermore, while Plaintiff states he intends to return to Fresno "in January 2023," his

17   plan to visit either of the Five Below stores is not discussed.  That is, Plaintiff does not expressly

18   state he will revisit either of the Five Below stores in January 2023, but instead alleges he will

19   visit the Five Below Stores "as documented above."  (FAC ¶ 56.)  A plain review of the FAC,

20   however, reveals no further discussion of specific plans to revisit a Five Below store in the future.

21   (See generally id.)  Rather, the allegations merely indicate Plaintiff sometimes visits Fresno "to

22   lodge, eat or attend a 49ers Empire SoCal barbecue," and sometimes passes through Fresno "on

23   his way to Sacramento, Stockton and Northern California."  (Id. at ¶ 31.)  These allegations do

24   not support a reasonable inference that, when Plaintiff visits or passes through Fresno "in January

25   2023," he will also at that time definitely do some "specialty discount" shopping at the Riverside

26   and/or Blackstone Five Below store, so as to establish a legitimate intent to revisit at least one of

27   those stores.

28   Relatedly, the Court cannot conclude the allegations establish a "genuine" intent to return

to the Riverside or Blackstone Store. To this point, the Court feels compelled to note the internal inconsistencies within the FAC: Plaintiff's allegations suggest Defendant's Riverside and Blackstone Five Below stores are uniform in both their goods and their alleged barriers. Because Plaintiff alleges he is deterred from revisiting both the Riverside Five Below and the Blackstone Five Below, but for their identical barriers, he has not established a legitimate intent to return to either one. That is, if both store locations remediate the purported barriers, it is unclear which store location Plaintiff intends to revisit. See Sai Ashish, 2021 WL 4804220, at *10 (finding plaintiff failed to "plausibly allege an intent to return to the [subject place of public accommodation] where the exact same intent is alleged with respect to thirty-three other [public accommodations] in the same vicinity, against whom Plaintiff also filed ADA claims…."); Strojnik v. Vill. 1017 Coronado, Inc. (Vill. 1017 Coronado), No. 19-cv-02210-BAS-MSB, 2020 WL 3250608 (S.D. Cal. Jun. 16, 2020) (finding plaintiff failed to plausibly allege intent to return where he filed at least twenty-two other ADA lawsuits against nearby hotels, alleging his intent to return to each hotel when the alleged barriers were removed). The Court also cannot say it is sufficiently satisfied with Plaintiff's attempt to explain why he has a genuine intent to revisit the Five Below stores in Fresno as opposed to the Five Below stores closer to his home in Arizona. Plaintiff explains that he has visited Five Below stores closer to his home in the Phoenix Metropolitan Area, but noticed that they are also inaccessible. (See FAC ¶¶ 28–29.) Construing the FAC liberally, as it must, Hebbe, 627 F.3d at 342, perhaps Plaintiff is suggesting he prefers seeking goods from the Five Below stores in California rather than the Five Below stores in Arizona because the Phoenix stores, while imminently closer to his home in Casa Grande, Arizona, are even more inaccessible than the at-issue Five Below stores located in Fresno, California. But this inference strains credulity to the point that the Court concludes Plaintiff has not "nudged [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 548.

More plausible is Plaintiff's allegation that he visits various big box stores when he visits Fresno, "including Five Below, … to determine whether they are compliant with accessibility laws." (FAC ¶¶ 28–33.) A footnote to the complaint which cites to CREEC for the proposition

1  that an ADA plaintiff's motive for visiting a public accommodation is irrelevant (FAC ¶ 33 n.1),

2  supports an allegation that Plaintiff intends to return to the stores in order to continue with his

3  objective of being an "ADA tester."  Plaintiff is correct that a plaintiff's motivation for visiting a

4  place of public accommodation is irrelevant.  <u>CREEC</u>, 867 F.3d at 1101 (finding ADA plaintiffs'

5  "status as ADA testers does not deprive them of standing").  Yet, as the afore-referenced cases

6  demonstrate, the Court *may* consider any scheduling conflicts posed by the number of other

7  establishments an ADA plaintiff has pledged to visit following remediation of their purported

8  barriers in assessing whether the plaintiff has sufficiently alleged a plausible intent to return to the

9  at-issue establishment.  <u>See</u>, <u>e.g.</u>, <u>Sai Ashish</u>, 2021 WL 4804220, at *10; <u>Vill. 1017 Coronado</u>,

10  2020 WL 3250608 (finding plaintiff failed to plausibly allege intent to return where he filed at

11  least twenty-two other ADA lawsuits against nearby hotels, alleging his intent to return to each

12  hotel when the alleged barriers were removed); <u>see also</u> <u>CREEC</u>, 867 F.3d at 1099–1100

13  (acknowledging that a plaintiff "who do[es] not in fact intend to use a facility" does not actually

14  have an imminent injury for Title III standing purposes) (citing <u>Houston v. Marod Supermarkets,</u>

15  <u>Inc.</u>, 733 F.3d 1323, 1335–37 (11th Cir. 2013) (assessing various factors in determining whether

16  plaintiff suing under ADA Title III was likely to actually visit the supermarket, including prior

17  visits, proximity of residence to store, plans for future visits, and status as an "ADA tester who

18  has filed many similar lawsuits")); <u>Strojnik v. Pasadena Robles Acquisition, LLC (Pasadena</u>

19  <u>Robles)</u>, 801 Fed. App'x 569, 570 (9th Cir. 2020) (affirming dismissal for lack of standing for

20  failure to demonstrate an intent to return to defendant's hotel or that he was deterred from visiting

21  the hotel; also noting <u>CREEC</u> held district courts must make "case-by-case determinations about

22  whether a particular plaintiff's injury is imminent).

23       Here, the Court notes that, at present, Plaintiff has filed at least 55 federal accessibility

24  cases across the federal district courts of California (18 cases in the Eastern District, 14 cases in

25  the Central District, 14 in the Southern District, and 9 in the Northern District).  Plaintiff

26  also filed approximately 150 cases in the District of Arizona, prior to initiating litigation in

27  California.[6]  Many of the complaints filed in these cases were verified, and aver that Plaintiff

28  _____
[6] <u>Gastelum v. Cent. Valley Hosp. LLC</u>, No. 1:21-cv-01079-JLT-SAB (E.D. Cal. Jul. 12, 2021) (intent to visit hotel in

1

2   Bakersfield, settled August 2022); <u>Gastelum v. Nw. Target LLC</u>, No. 1:21-cv-01164-JLT-BAK (E.D. Cal. Aug. 2, 2021) (intent to visit Target in Bakersfield, settled January 2022); <u>Gastelum v. Nandi Laksh Inc.</u>, No. 1:21-cv-01201-

3   DAD-BAK (E.D. Cal. Aug. 9, 2021) (intent to visit Super 8 hotel in Bakersfield, settled February 2022); <u>Gastelum v. TC Heritage Inn 2 of Bakersfield LLC</u>, No. 1:21-cv-01230-JLT-BAK (E.D. Cal. Aug. 13, 2021) (intent to visit Home

4   2 Suites in Bakersfield, motion to dismiss pending); <u>Gastelum v. Dick's Sporting Goods Inc.</u>, No. 1:21-cv-01289-DAD-JLT (E.D. Cal. Aug. 24, 2021) (intent to visit store in Bakersfield, voluntarily dismissed by Plaintiff in

5   September 2021); <u>Gastelum v. Nw. Target LLC</u>, No. 1:21-cv-01330-AWI-BAK (E.D. Cal. Sept. 3, 2021) (intent to visit World Market Bakersfield, settled in December 2021); <u>Gastelum v. Kohl's Dept. Stores, Inc.</u>, No. 1:21-cv-

6   01740-JLT-BAM (E.D. Cal. Dec. 8, 2021) (intent to visit Kohl's in Bakersfield, motion for judgment on the pleadings pending); <u>Gastelum v. Veer Hosp. Inc.</u>, No. 1:22-cv-00112-DAD-BAK (E.D. Cal. Jan. 27, 2022) (intent to

7   visit Motel 6 in Bakersfield, voluntarily dismissed by Plaintiff in May 2022); <u>Gastelum v. Easiness LP</u>, No. 22-cv-00166-ADA-BAK (E.D. Cal. Feb. 8, 2022) (intent to visit DoubleTree hotel in Bakersfield, Plaintiff currently

8   seeking entry of default); <u>Gastelum v. Tilly's Inc.</u>, No. 1:22-cv-00178-ADA-BAK (E.D. Cal. Feb. 11, 2022) (intent to visit Tilly's in Bakersfield and Fresno, settlement conference and motion to dismiss pending); <u>Gastelum v. Tractor

9   Supply Co.</u>, No. 1:22-cv-00209-JLT-SAB (E.D. Cal. Feb. 18, 2022) (intent to visit stores in Fresno and Calimesa, settled in May 2022); <u>Gastelum v. Petco Animal Supplies Stores, Inc.</u>, No. 1:22-cv-00792-BAM (E.D. Cal. Jun. 27,

10   2022) (intent to visit store on Riverside Drive, Fresno, scheduling conference pending); <u>Gastelum v. Jackson IV LLC</u>, No. 2:21-cv-01321-TLN-CKD (E.D. Cal. Jul. 26, 2021) (intent to visit Hamptom Inn in Sacramento,

11   voluntarily dismissed by Plaintiff in January 2022); <u>Gastelum v. LL Sacramento LP</u>, No. 2:21-cv-01481-KJM-JDP (E.D. Cal. Aug. 16, 2021) (intent to visit Larkspur Landing in Sacramento, FAC pending following granting of

12   motion to dismiss); <u>Gastelum v. Arden Fair Assocs.</u>, No. 2:21-cv-01722-DAD-AC (E.D. Cal. Sept. 20, 2021) (intent to visit Forever 21 store in Sacramento, status conference pending); <u>Gastelum v. Macy's Inc.</u>, No. 2:22-cv-00065-

13   KJM-DB (E.D. Cal. Jan. 10, 2022) (intent to visit Macy's in Sacramento, voluntarily dismissed by Plaintiff Jan. 28, 2022); <u>Gastelum v. Penny OpCo., LLC</u>, No. 2:22-cv-00283-KJM-AC (E.D. Cal. Feb. 11, 2022) (intent to visit JC

14   Penney's in Sacramento, Veterinary Dispute Resolution Program (VDRP) pending); <u>Gastelum v. Bed Bath & Beyond, Inc.</u>, No. 2:21-cv-002274-KJM-DB (E.D. Cal. Dec. 8, 2021) (intent to visit store in Sacramento, settled in

15   February 2022); <u>Gastelum v. Blythe LLC</u>, No. 5:19-cv-01143-RGK-SP (C.D. Cal. Jun. 20, 2019) (intent to visit hotel in Blythe, CA, dismissed for lack of prosecution in September 2020); <u>Gastelum v. KPK Hosp. LLC</u>, No. 5:21-cv-

16   01510-JGB-KK (C.D. Cal. Sept. 3, 2021) (intent to visit Holiday Inn Express in Riverside, appeal of order granting motion to dismiss for lack of jurisdiction pending); <u>Gastelum v. Jayashree Krishna, Inc.</u>, No. 5:21-cv-01600-MEMF-

17   SHK (C.D. Cal. Sept. 20, 2021) (intent to visit Quality Inn in San Bernardino, default pending); <u>Gastelum v. Hobby Lobby Stores, Inc.</u>, No. 5:21-cv-01888-JWH-KK (C.D. Cal. Nov. 5, 2021) (intent to visit store in Banning, CA,

18   settled in January 2022); <u>Gastelum v. LQSB LLC</u>, No. 5:21-cv-02166-JWH-SP (C.D. Cal. Dec. 20, 2021) (intent to visit La Quinta Inn in San Bernardino, mediation pending); <u>Gastelum v. All. Riverside Hosp., LLC</u>, No. 5:22-cv-

19   00064-JGB-SHK (C.D. Cal. Jan. 11, 2022) (intent to visit Courtyard Marriott in Riverside, voluntarily dismissed by Plaintiff in May 2022); <u>Gastelum v. Kohls Inc.</u>, No. 5:22-cv-00301-FMO-SP (C.D. Cal. Feb. 17, 2022) (intent to visit

20   store in Beaumont, CA, motion for judgment on the pleadings pending); <u>Gastelum v. JAYDAIR2 Hosp., LLC</u>, No. 5:22-cv-00336-MEMF-E (C.D. Cal. Feb. 24, 2022) (intent to visit Super 8 hotel in San Bernardino, settled in August

21   2022); <u>Gastelum v. Staples, Inc.</u>, No. 5:22-cv-00337-DSF-MRW (C.D. Cal. Feb. 24, 2022) (intent to visit store in Yucaipa, CA, settled in May 2022); <u>Gastelum v. 4045 Univ., LLC</u>, No. 5:22-cv-01033-SVW-SP (C.D. Cal. Jun. 24,

22   2022) (intent to visit hotel in Riverside, default pending); <u>Gastelum v. Calimesa Motel Mgmt., Inc.</u>, No. 5:22-cv-01036-MWF-SP (C.D. Cal. Jun. 24, 2022) (intent to visit hotel in Calimesa, CA, OSC for failure to prosecute

23   pending); <u>Gastelum v. Adire Int'l, LLC</u>, No. 5:22-cv-01037-JFW-SHK (C.D. Cal. Jun. 24, 2022) (intent to visit store in San Bernadino, scheduling conference pending); <u>Gastelum v. Karishma Lodging</u>, No. 5:22-cv-00063-JGB-KK

24   (C.D. Cal. Jan. 11, 2022) (intent to visit Motel 6 in Riverside, pending mediation); <u>Gastelum v. Platinum Hotel Grp., LLC</u>, No. 5:22-cv-00374-JWH-KK (C.D. Cal. Feb. 28, 2022) (intent to visit hotel in Beaumont, CA, dismissed for

25   failure to prosecute in May 2022); <u>Gastelum v. Desert City Hotels, Inc.</u>, No. 3:18-cv-02424-JAH-NLS (S.D. Cal. Oct. 22, 2018) (intent to visit Red Roof Inn, in Blythe, CA, voluntarily dismissed by Plaintiff in January 2019);

26   <u>Gastelum v. Calexico Hotel Grp., L.P.</u>, No. 3:18-cv-02425-AJB-RBM (S.D. Cal. Oct. 22, 2018) (intent to visit Holiday Inn Express in Calexico, voluntarily dismissed by Plaintiff in February 2019); <u>Gastelum v. Greens Inv. 1 LLC</u>, No. 3:19-cv-01145-WQH-AHG (S.D. Cal. Jun. 17, 2019) (intent to visit hotel in Blythe, voluntarily dismissed

27   by Plaintiff in March 2020); <u>Gastelum v. TJX Cos.</u>, No. 3:21-cv-01435-GPC-DDL (S.D. Cal. Aug. 11, 2021) (intent to visit store in San Diego, case management conference pending); <u>Gastelum v. J. Dada Donlong Inc.</u>, No. 3:18-cv-

28   02426-DMS-MDD (S.D. Cal. Oct. 23, 2018) (intent to visit hotel in Blythe, CA, voluntarily dismissed by Plaintiff in January 2019); <u>Gastelum v. Pinnacle Hotel Cir. LP</u>, No. 3:21-cv-01458-JLS-DDL (S.D. Cal. Aug. 17, 2021) (intent to visit hotel in San Diego, motion to dismiss pending); <u>Gastelum v. Bhavna & Bhavna LLC</u>, No. 3:19-cv-01144-

would visit each of the establishments identified in the complaint but for their alleged barriers. The Court further notes that, in California cases in which Plaintiff was required to file an amended complaint, his allegations relating to his reasons for visiting California, in general, are identical. Finally, the Court notes that, while a fair number of the California cases currently remain pending, an even greater number of these cases have settled or were voluntarily dismissed by Plaintiff, which presumably means the at-issue establishments have remediated their ADA issues and Plaintiff is no longer deterred from visiting those establishments as he wishes. On this record, in addition to the foregoing reasons, and even liberally construing the amended complaint, the Court simply cannot conclude Plaintiff's proffer to return to the Riverside and/or Blackstone Store, to the exclusion of other the multiple other establishments he has sued and is currently suing, supports a plausible, genuine intent to return to these particular stores.

In sum, Plaintiff's allegations provide no reason for intending to revisit the Riverside Five Below, as opposed to the Blackstone Five Below (or vice versa), or some other Five Below location. Nor has Plaintiff submitted other facts for the Court to conclude he has plausibly alleged a genuine intent to revisit the Riverside *or* Blackstone Five Below store, as opposed to

---

JLT-LL (S.D. Cal. Jun. 17, 2019) (intent to visit hotel in Indio, CA, dismissed for failure to prosecute in September 2019); Gastelum v. M5 Dev. LLC, No. 3:21-cv-01255-BAS-AHG (S.D. Cal. Jul. 12, 2021) (intent to visit Hilton Garden Inn in San Diego, settled in September 2021); HEES II, No. 3:21-cv-01337-JLS-RBB (S.D. Cal. Jul. 27, 2021) (intent to visit Big 5 Sporting Goods in San Diego, voluntarily dismissed by Plaintiff in May 2022); Gastelum v. HEES II, No. 3:21-cv-01389-JO-DDL (S.D. Cal. Aug. 2, 2021) (intent to visit Big Lots store in San Diego, voluntarily dismissed by Plaintiff in August 2022); Gastelum v. Mann Enters. Inc., No. 3:21-cv-01567-BAS-AHG (S.D. Cal. Sept. 3, 2021) (intent to visit Ross Dress for Less in San Diego, settled in January 2022); Gastelum v. Chhatrala Hotel Grp., Inc., No. 3:21-cv-01885-BTM-BLM (S.D. Cal. Nov. 5, 2021) (intent to visit hotel in San Diego, service on defendants pending); Gastelum v. Target Corp., No. 3:22-cv-00030-CAB-RBB (S.D. Cal. Jan. 11, 2022) (intent to visit store in San Diego, voluntarily dismissed by Plaintiff in July 2022); Gastelum v. G5 Globar Partners IX LLC, No. 3:22-cv-00177-RBM-DEB (S.D. Cal. Feb. 7, 2022) (intent to visit hotel in San Diego, voluntarily dismissed by Plaintiff in April 2022); Gastelum v. Tri-County Hosp., No. 5:21-cv-05291-VKD (N.D. Cal. Jul. 9, 2021) (intent to visit hotel in Gilroy, CA, motion to dismiss pending); Gastelum v. Trimark-Gilroy Hosp., LLC, No. 5:21-cv-05703-EJD (N.D. Cal, Jul. 26, 2021) (intent to visit Hilton Garden Inn Gilroy, settled in September 2022); Gastelum v. Canciamilla, No. 5:21-cv-05955-VKD (N.D. Cal. Aug. 2, 2021) (intent to visit Old Navy in Gilroy, settled in December 2021); Gastelum v. Bmv Hotels LP, No. 5:21-cv-06099-VKD (N.D. Cal. Aug. 9, 2021) (intent to visit Best Western hotel in Gilroy, settled in October 2021); Gastelum v. Blue Diamond Hosp. LLC, No. 5:21-cv-06234-EJD (N.D. Cal. Aug. 12, 2021) (intent to visit hotel in Gilroy, motion to dismiss pending); Gastelum v. Parvarti Hosp. Inc., No. 5:21-cv-06235-BLF (N.D. Cal. Aug. 12, 2021) (intent to visit hotel in Gilroy, litigation ongoing); Gastelum v. Gilroy Vill. Shopping Ctr. LLC, No. 5:21-cv-06709-NC (N.D. Cal. Aug. 30, 2021) (intent to visit Big Lots store in Gilroy, settled in May 2022); Gastelum v. TJX Cos., No. 5:21-cv-06714-VKD (N.D. Cal. Aug. 30, 2021) (intent to visit HomeGoods store in Gilroy, motion to dismiss pending); and Gastelum v. Bain Cap. LLC, No. 5:21-cv-08639-VKD (N.D. Cal. Nov. 5, 2021) (intent to visit Burlington store in Gilroy, motion to dismiss and motion to amend pending). Plaintiff's 150 federal accessibility cases filed in the District of Arizona are too numerous to recount here.

16

one of the other "various big box stores" Plaintiff has alleged he also or alternatively visits when he is in Fresno (see FAC ¶ 33).  At most, Plaintiff alleges a preference for Five Below stores, in general, over other "big box stores" because it is a "specialty discount store" that creates "a pleasant flea market type atmosphere which Plaintiff enjoys" (see id. at ¶¶ 26–27); however, Plaintiff has not alleged the Riverside and Blackstone stores possess different selections of merchandise from each other, or some unique quality requiring him to visit either Riverside or Blackstone and not some other Five Below location, let alone some other "big box" store.[7]  Nor has Plaintiff alleged sufficient facts for the Court to reasonably infer that Plaintiff intends to visit *any* "big box" store during his next, unspecified visit to Fresno "to lodge, eat or attend a 49ers Empire SoCal barbecue," or "on his way to Sacramento, Stockton and Northern California."  (Id. at ¶ 31.)

Therefore, the Court finds Plaintiff's allegations are insufficient to establish a genuine intent to return to the Riverside Store or the Blackstone Store.  Because Plaintiff fails to sufficiently allege a genuine intent to return to the Riverside Store or the Blackstone Store, he lacks Article III standing and this Court lacks jurisdiction over the action.  This deficiency warrants dismissal.  See Fed. R. Civ. P. 12(h)(3); Arbaugh, 546 U.S. at 514; Valdez, 372 F.3d at 1116; see also Langer v. YM Holdings, LLC, No. 18-CV-1114 JLS (KSC), 2020 WL 3498165, at *4 (S.D. Cal. Jun. 29, 2020) (dismissing ADA complaint for lack of subject-matter jurisdiction premised on lack of standing).

Alternatively, if the District Judge concludes intent to return has been adequately alleged as to one or both of the Fresno Five Below stores, the Court recommends the FAC proceed on the ADA claim only and that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, or issue an order to show cause as to why it should not decline supplemental jurisdiction, as discussed herein.

///

---

[7] The Court additionally notes it appears the only goods and services at the Five Below stores of which Plaintiff has availed himself is their stylus pen selection.  (See id. at ¶¶ 34, 39, 41.)  Without putting too fine a point on this matter, the pens do not appear to be a "specialty discount" item that can only be obtained from a Five Below store; for this reason, as well, the Court cannot conclude Plaintiff has presented sufficient factual allegations to establish a plausible intent to revisit the identified Five Below stores in Fresno.

**B.      New Claims and Allegations**

In its prior screening order, the Court granted Plaintiff leave to amend the original complaint to cure the deficiencies with respect to jurisdiction and Plaintiff's ADA claim, as identified in the order.  The Court did not grant Plaintiff leave to file an amended complaint with new claims.  Indeed, absent leave from the Court, Plaintiff may not change the nature of his suit by adding new, unrelated claims in an amended complaint.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  For this reason alone, the following "claims" should be dismissed.  However, dismissal of such claims is also warranted, as follows.

1.      New Cause of Action: "Federal Pre-Emption of Unruh's 'Heightened' and 'Special Procedural Requirements Aimed at Limiting Suits by [Disabled Individuals]' "

In the instant FAC, the Court notes Plaintiff has added an entire cause of action, titled "Federal Pre-Emption of Unruh's 'Heightened' and 'Special Procedural Requirements Aimed at Limiting Suits by [Disabled Individuals]'."  (FAC at 12–13.)  Plaintiff did not seek leave to add this cause of action and doing so now exceeds the leave he was previously granted.  The cause of action should therefore be dismissed.

Furthermore, the cause of action should be dismissed for failure to state a claim as a matter of law.  As an initial matter, the Court notes Plaintiff's attempted new cause of action is not a factually-based claim, but a legal argument that is, at best, paradoxical.  As understood by this Court, Plaintiff appears to argue the ADA preempts the Unruh Act with respect to pleading requirements, but not with respect to recovery of monetary damages, such as the $4,000 per Unruh violation, per encounter, and the treble damages pursuant to California Civil Code § 3345(b) that Plaintiff currently seeks to recover in federal court.  Regardless, "[l]egal sounding but meaningless verbiage is nothing more than a nullity."  Zahir v. Mountcastle, No. 21-CV-1023, 2021 WL 1143381, at *3 (E.D. Pa. Mar. 25, 2021) ("other than irrelevant statements of legal fictions, Zahir asserts no facts to demonstrate any viable cause of action for money damages…."); see also U.S. v. Studley, 783 F.2d 934, 937 n.3 (9th Cir. 1986) (rejecting arguments based on sovereign citizen ideology as "utterly meritless").

Moreover, the argument is unnecessary here.  In federal court, federal procedural law (and

18

thus federal pleading requirements) are applied, O'Campo v. Chico Mall, LP, 758 F. Supp. 2d 976, 984–85 (E.D. Cal. 2010) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)); therefore, if the Court elects to exert supplemental jurisdiction over Plaintiff's Unruh claim, he is not required to comply with the "heightened" state procedural requirements with which he takes issue. Plaintiff's prayer for equitable relief—in the form of a declaration that the Unruh Act's "heightened" and "special procedural requirements aimed at limiting suits by [disabled individuals]" are "expressly, field and conflict preempted by the ADA, and an injunction against California from enforcing Unruh's "heightened" and "special procedural requirements aimed at limited suits by [disabled individuals]"—is similarly misplaced.  In addition, the requested relief is improper because Plaintiff is not suing the State of California; thus, even assuming it could enforce such an injunction, the Court cannot do so against a nonparty.

Finally, to the extent Plaintiff has anticipated the Court's recommendation to decline to retain supplemental jurisdiction over his state law claims[8] and is attempting to assert this new cause of action as a means of bolstering his argument that supplemental jurisdiction over the Unruh Act claim is appropriate (see, e.g., FAC ¶ 9 (indicating bases for supplemental jurisdiction are (1) federal preemption and (2) the ADA claim)), Plaintiff's arguments shall be addressed infra.  However, with respect to the instant purported cause of action, Plaintiff's legal arguments devoid of any factual basis are insufficient to state a claim on which relief may be granted.  This "cause of action" must therefore be dismissed.

2.      Class Action Allegations

Similarly, the Court notes Plaintiff has added a number of "others similarly situated" phrases to his various allegations throughout the FAC which were not included in the original complaint.  (Compare id. at ¶¶ 58, 59(d), 63(b), (d) with Compl. ¶¶ 22, 26, ECF No. 1.)  The phrase "others similarly situated" may signify an attempt to recast this litigation as a class action; however, Plaintiff did not seek, nor was he granted leave, to convert his instant individual claims

---

[8] In its order screening the original complaint, the Court cautioned Plaintiff that it was inclined to either decline, or order Plaintiff to show cause why it should not decline, to retain supplemental jurisdiction over Plaintiff's remaining state law claims, as it found that exercising supplemental jurisdiction over Plaintiff's Unruh Act and DPA claims in this case "would not further the interest of judicial economy, convenience, fairness and comity."  (ECF No. 2 at 13 n.10 (citations omitted).)

19

1    into a putative class.  Furthermore, apart from this one "others similarly situated" phrase now

2    peppered throughout the causes of action, there continue to be no factual allegations indicative of

3    a class action.  See, e.g., Fed. R. Civ. P. 23 (setting forth requirements to assert a class action).

4    Accordingly, to the extent Plaintiff seeks to bring his ADA claim on behalf of an otherwise

5    unidentified putative class, the FAC does not assert sufficient factual allegations to do so.  Any

6    such claim should therefore be dismissed.

7         **C.     State Law Claims**

8         Having found that Plaintiff lacks standing to pursue his ADA claim, which is Plaintiff's

9    sole federal law claim, the only claims remaining are Plaintiff's state law claims.  The Court

10   typically has discretion to refuse to exercise supplemental jurisdiction over state claims when all

11   federal claims have been dismissed.  See 28 U.S.C. § 1367(c)(3).  Indeed, the Ninth Circuit has

12   stated that "state law claims 'should' be dismissed if federal claims are dismissed before trial."

13   Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir.

14   1997), as amended (Oct. 1, 1997) (quoting United Mine Workers of Am. v. Gibbs (Gibbs), 383

15   U.S. 715, 726 (1966)) (emphasis omitted).  However, where, as recommended here, a district

16   court "dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all

17   claims."  Herman Fam. Revocable Tr. v. Teddy Bear, 254 F.3d 802, 806 (9th Cir. 2001).  In light

18   of this controlling authority, Plaintiff's remaining state law claims must also be dismissed.

19        Alternatively, should the District Judge find this Court has jurisdiction over Plaintiff's

20   ADA claim, this Court nonetheless recommends the District Judge decline to exercise

21   supplemental jurisdiction over Plaintiff's state law claims or, in the alternative, order Plaintiff to

22   show cause why it should not do so.

23        1.     Legal Standard for Supplemental Jurisdiction

24        "The propriety of exercising supplemental jurisdiction can be raised by the parties or *sua*

25   *sponte* by the courts," Carne v. Stanislaus Cnty. Animal Servs. Agency, 445 F. Supp. 3d 772,

26   774–75 (E.D. Cal. 2020), so long as the district court provides reasoning "for the decision to

27   decline to exercise supplemental jurisdiction," Acri, 114 F.3d at 1001, n.3.  Thus, even where a

28   plaintiff establishes standing sufficient to make the court's exercise of jurisdiction over federal

1    claims appropriate, the court retains discretion over whether to exercise supplemental jurisdiction

2    over related state law claims pursuant to 28 U.S.C. § 1367(a).

3         A federal court has supplemental jurisdiction over state law claims that are so related to

4    claims over which the court has original jurisdiction that they form the same case or controversy

5    under Article III of the U.S. Constitution.  28 U.S.C. § 1367(a); see also Gibbs, 383 U.S. at 725;

6    Kuba v. 1–A Agr. Ass'n, 387 F.3d 850, 855 (9th Cir. 2004).  However, a court may decline to

7    exercise supplemental jurisdiction over a claim where: "(1) the claim raises a novel or complex

8    issue of State law, (2) the claim substantially predominates over the claim or claims over which

9    the district court has original jurisdiction, (3) the district court has dismissed all claims over

10   which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling

11   reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

12        In determining whether to decline jurisdiction pursuant to 28 U.S.C. § 1367(c), a court

13   should  consider  whether  the  exercise  of  jurisdiction  would  promote  judicial  economy,

14   convenience and fairness to litigants, and comity.  See Gibbs, 383 U.S. at 726; City of Chicago v.

15   Int'l Coll. of Surgeons, 522 U.S. 156, 172–73 (1997); see also Brady v. Brown, 51 F.3d 810, 816

16   (9th Cir. 1995).  Comity and fairness, in particular, are important considerations underlying the

17   decision to exercise supplemental jurisdiction.  Gibbs, 383 U.S. at 726.  Comity may constitute a

18   compelling circumstance to decline jurisdiction when the case presents strong reasons to have the

19   state  court  interpret  state  law  or  when  the  plaintiff  engaged  in  forum  shopping.  Org. for

20   Advancement of Minorities with Disabilities v. Brick Oven Rest. (Brick Oven), 406 F. Supp. 2d

21   1120, 1132 (S.D. Cal. 2005); see also Feezor v. Tesstab Operations Grp., Inc. (Tesstab), 524 F.

22   Supp. 2d. 1222, 1225–26 (S.D. Cal. 2007).

23        2.    Analysis

24        a.    **Comparison of Claims**

25        The ADA prohibits discrimination "on the basis of disability in the full and equal

26   enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

27   place of public accommodation by any person who owns, leases (or leases to), or operates a place

28   of public accommodation."  42 U.S.C. § 12182(a).  To prevail on a claim under the ADA, a

1   plaintiff must prove that (1) he has a disability; (2) the defendant operates, leases, or owns a place

2   of public accommodation; and (3) the plaintiff was denied appropriate accommodations by the

3   defendant because of his disability.  Molski v. M.J. Cable, Inc. (M.J. Cable), 481 F.3d 724, 730

4   (9th Cir. 2007).  "[A] plaintiff need not show intentional discrimination in order to make out a

5   violation of the ADA."  Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 846 (9th Cir.

6   2004).  Further, under the ADA, "damages are not recoverable ... only injunctive relief is

7   available."  Wander v. Kaus, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)).

8          The Unruh Act, similarly, provides in part that "[a]ll persons within the jurisdiction of

9   [California] are free and equal, and no matter what their ... disability ... are entitled to the full and

10  equal accommodations, advantages, facilities, privileges, or services in all business

11  establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  The Unruh Act provides that

12  a violation of the ADA constitutes a violation of § 51 of the Unruh Act.  Cal. Civ. Code § 51(f).

13  Or, alternatively, "[a] violation of the Unruh Act may be maintained independent of an ADA

14  claim where a plaintiff pleads 'intentional discrimination in public accommodations in violation

15  of the terms of the [Unruh] Act.' "  Schutza v. McDonald's Corp. (McDonald's), 133 F. Supp. 3d

16  1241, 1247 (S.D. Cal. 2015) (citations omitted).  However, a showing of intentional

17  discrimination is not required where a plaintiff brings an Unruh Act claim on the grounds that a

18  defendant has violated the ADA.  See Munson v. Del Taco, Inc., 46 Cal.4th 661, 679 (2009); see

19  also Lentini, 370 F.3d at 847 ("[N]o showing of intentional discrimination is required where the

20  Unruh Act violation is premised on an ADA violation.").

21         Unlike the ADA, however, the Unruh Act allows for recovery of monetary damages.  A

22  plaintiff may recover actual damages for each and every offense "up to a maximum of three times

23  the amount of actual damage but in no case less than four thousand dollars ($4,000)[.]"  Cal. Civ.

24  Code § 52(a).  Furthermore, "[t]he litigant need not prove she suffered actual damages to recover

25  the independent statutory damages of $4,000."  M.J. Cable, 481 F.3d at 731 (citing Botosan v.

26  Paul McNally Realty, 216 F.3d 827, 836 (9th Cir. 2000)).  The California Disabled Persons Act,

27  which Plaintiff raises as a claim in his fourth cause of action, also permits the recovery of

28

1   monetary damages.[9]  Cal. Civ. Code § 54.1.

2         Here, Plaintiff's state claims plainly share a common nucleus of operative fact and are part

3   of the same case or controversy as Plaintiff's federal ADA claim, as required for supplemental

4   jurisdiction under 28 U.S.C. § 1367(a).  Indeed, the FAC suggests as much by noting that "a

5   violation of the ADA is a violation of the Unruh Act."  (FAC ¶ 61.)  However, in the instant case,

6   the Court finds Plaintiff's state law claims substantially predominate over his ADA claim, and

7   there are compelling reasons to decline supplemental jurisdiction.  As discussed herein, the Court

8   recommends declining to exercise supplemental jurisdiction over Plaintiff's Unruh Act and

9   Disabled Persons Act claims for these reasons.

10         **b.**      **Substantially Predominating State Claims**

11         A court may dismiss state law claims when "in terms of proof, of the scope of the issues

12   raised, or of the comprehensiveness of the remedy sought," the state law claims substantially

13   predominate over the federal claims.  Rutherford v. Ara Lebanese Grill, No. 18-CV-01497-AJB-

14   WVG, 2019 WL 1057919, at *3 (S.D. Cal. Mar. 6, 2019) (quoting Gibbs, 383 U.S. at 726–

15   27).  In many cases, district courts have found plaintiffs' state law claims to predominate over

16   their federal ADA claim where they seek significant damages under state law and allege legal

17   theories applicable only to state law claims.  See, e.g., Schutza v. Cuddeback (Cuddeback), 262 F.

18   Supp. 3d 1025, 1029–30 (S.D. Cal. 2017) (finding state law claims predominated where plaintiff

19   could potentially recover up to $36,000 for Unruh Act claims and plaintiff alleged intentional

20   discrimination); McDonald's, 133 F. Supp. 3d at 1247–48 (finding state law claims predominated

21   where California accessibility standards provided independent basis for liability on state law

22   claims, plaintiff alleged intentional discrimination, and plaintiff sought damages and fees); but

23   see Johnson v. Makinen (Makinen), No. 2:09-CV-796 FCD KJM, 2009 WL 2137130, at *3 (E.D.

24   Cal. Jul. 15, 2007) (finding Unruh Act claim did not predominate over ADA claim "where

25   plaintiff has one state claim and one federal claim, and both are still viable").  In addition, courts

26   have determined a plaintiff's state law claims predominate over his federal claims "in instances

---

[9] The Court notes, however, that a plaintiff may not recover damages under both the Unruh Act and the Disabled
Persons Act.  See Johnson v. Wayside Prop., Inc., 41 F. Supp. 3d 973, 981 (E.D. Cal. 2014) (citing Munson, 46
Cal.4th at 675).

when a plaintiff abandons his federal ADA claims, a plaintiff's request for injunctive relief subsequently becomes moot, … a plaintiff's numerous state law claims outnumber a solitary federal claim under the ADA, or when plaintiff's federal claims are dismissed before trial." Johnson v. Barlow, No. CIV. S-06-01150 WBS GGH, 2007 WL 1723617, at *3 (E.D. Cal. Jun. 9, 2007) (citations omitted).[10]

Here, the legal theory underlying Plaintiff's Unruh Act claim is that Defendants violated the ADA. (See FAC ¶ 61.) However, Plaintiff also appears to allege intentional discrimination as an alternative basis for his Unruh Act claim. (See id. at ¶ 35 (Plaintiff advised Defendant's President of the purported barriers in the Riverside and Blackstone Stores and requested Defendant to use best efforts to remediate the accessibility barriers, but the president never responded); see also id. at ¶¶ 38–40 (after his first visit to the Riverside Store, Plaintiff revisited the store to see if the requested remediations had been completed and discovered that they had not)); cf. Hankins v. El Torito Rests., Inc., 63 Cal. App. 4th 510, 518 (1998) (allegations that restaurant acted with knowledge of the effect its conduct had on people with disabilities was sufficient to plead intentional discrimination). As previously noted, while a violation of the ADA does not require intentional discrimination, a claim under the Unruh Act may require such an intent. McDonald's, 133 F. Supp. 3d at 1247; see also Lentini, 370 F.3d at 846 ("It is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA."). This is another important distinction between the federal and state law claims. Thus, intent to discriminate would only be relevant to the Plaintiff's Unruh Act claim and would require application of state law standards.

Further, the Court notes Plaintiff additionally brings a Disabled Persons Act claim under state law. Thus, Plaintiff's state claims outnumber his lone federal claim under the ADA, and may be deemed to predominate the lawsuit on this basis as well. Cf. Makinen, 2009 WL

---

[10] To be clear, the Court does not advocate a blanket rule that would preclude a district court from ever asserting supplemental jurisdiction over a state claim under the Unruh Act. Indeed, at least one other court in this district has declined to do so, concluding that "because the burdens of proof and standards of liability under the ADA and the Unruh Act are the same where the Unruh claim is predicated on an ADA violation, the mere differences in relief between the ADA and the Unruh Act do not warrant dismissal under section 1367(c)(2)." Makinen, 2009 WL 2137130, at *3. Instead, the Court's finding here is based on consideration of the circumstances of this particular case.

2137130, at *3 (finding Unruh Act claim did not predominate over ADA claim "where plaintiff has one state claim and one federal claim, and both are still viable").  Given various issues of proof require application of state law, comity favors having a state court, familiar with such standards, resolve those issues.

Further, the number of violations alleged by Plaintiff and the total amount of damages available to him under the Unruh Act—a minimum of $4,000 for each offense—indicates Plaintiff's predominant focus is recovering monetary damages under state law.  At a minimum, Plaintiff alleges he encountered three barriers at the Riverside Store (on two separate occasions) and three violations at the Blackstone Store.  These allegations, if proven, would entitle him to an award of at least $36,000 under the Unruh Act.  Thus, under the totality of the circumstances presented, the Court finds that the monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief.  See Cuddeback, 262 F. Supp. 3d at 1030 (finding that statutory damages available under the Unruh Act substantially predominated over injunctive relief available under the ADA where the plaintiff alleged nine alleged violations that, if proven, would entitle plaintiff to an award of $36,000).  In light of the potential for Plaintiff to seek far greater state law damages and his inclusion of a state-law specific legal theory, this Court finds that Plaintiff's Unruh Act claim substantially predominates over his federal claim under the ADA.

### c.    Exceptional Circumstances

In addition, compelling interests of comity as well as discouraging forum shopping by serial litigants support this Court's recommendation to decline exercising supplemental jurisdiction over the state law claims.  See Gibbs, 383 U.S. at 726.

"California has a strong interest in protecting its citizens and businesses from abusive litigation and also in preventing its own laws from being misused for unjust purposes."  Brooke v. Suites LP, No. 3:20-cv-01217-H-AHG, 2020 WL 6149963, at *5–6 (S.D. Cal. Oct. 19, 2020) (declining supplemental jurisdiction over the plaintiff's Unruh Act claim "because it substantially predominates over her federal claim under the ADA and exceptional circumstances favor dismissal, including the Court's interests in comity and discouraging forum-shopping").  In 2012,

and again in 2015, California amended the Unruh Act to adopt heightened pleading requirements for disability discrimination lawsuits under the Act.  <u>Cuddeback</u>, 262 F. Supp. 3d at 1031–32 (citing Cal. Code Civ. Proc. § 425.50).   California adopted these provisions in an attempt to discourage the small number of plaintiffs and law firms who file a disproportionately large number of the construction-related accessibility lawsuits in the state from filing boilerplate complaints against small businesses, "apparently seeking quick cash settlements rather than correction of the accessibility violation," as "[t]his practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act … and the federal Americans with Disability Act of 1990."  Cal. Civ. Proc. Code § 425.55(a)(2).

Under this standard, "[e]xcept in complaints that allege physical injury or damage to property, a complaint filed by or on behalf of a high frequency litigant" is required to: identify the number of complaints alleging a construction-related accessibility claim that were filed during the last 12 months; identify the reason the individual was in the geographic area of the defendant's business; identify the reason why the individual desired access to the defendant's business, including the specific commercial, business, personal, social leisure, recreational (or other) purpose; be verified; and the plaintiff must pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees.  Cal. Civ. Proc. Code § 425.50; Cal. Gov't Code § 70616.5.  Under the California Code of Civil Procedure, a "high frequency litigant" is defined as a plaintiff or attorney who has filed ten or more complaints alleging a construction-related accessibility violation, that include a claim under the Unruh Act, within the 12-month period immediately preceding the lawsuit.  Cal. Civ. Proc. Code § 425.55(b)(1).

In light of these heightened pleading requirements for high frequency litigants, a growing trend of countless other district courts in this circuit have recognized that exercising supplemental jurisdiction over a high frequency litigant's Unruh Act claims would frustrate California's policy, as codified by statute, of subjecting such claims to stricter pleading standards and allow serial litigants to "use the federal court system as a loophole to evade California's pleading

requirements." <u>Rutherford</u>, 2019 WL 1057919, at \*4–5; <u>Cuddeback</u>, 262 F. Supp. 3d at 1031.[11]

As one Southern District of California court commented:

> Unfortunately for California, its courts rarely get to interpret the meaning and application of [the Unruh Act] provisions because creative plaintiffs are able to evade the heightened standards by bootstrapping an Unruh Act claim to a federal ADA claim, taking advantage of the lower pleading standards that come with it.  While there is nothing *per se* improper with a plaintiff's desire to proceed in federal court, there appears to be no reason to do so when the only relief available under the ADA is injunctive relief, which can also be secured in state court.

<u>Langer v. U.S. Green Techs., Inc. (Green Techs)</u>, No. 3:20-cv-01717-BEN-BGS, 2020 WL 7353447, at \*5 (S.D. Cal. Dec. 14, 2020) (quoting <u>Schutza v. Alessio Leasing, Inc.</u>, No. 18cv2154-LAB (AGS), 2019 WL 1546950, at \*3 (S.D. Cal. Apr. 8, 2019)) (internal quotations and citations omitted).  Indeed, many courts have observed that, "since the decision in <u>Schutza [v. Cuddleback]</u> … [which declined to exercise supplemental jurisdiction over related state law claims in an ADA case] the tide has changed and over 931 cases have favorably cited the decision rejecting supplemental jurisdiction." <u>Green Techs</u>, 2020 WL 7353447, at \*4 (citing <u>Cuddleback</u>, 262 F. Supp. 3d 1025; <u>see also</u> <u>Langer v. Honey Baked Ham, Inc.</u>, No. 3:20-CV-1627-BEN-AGS, 2020 WL 6545992, at \*7 (S.D. Cal. Nov. 6, 2020) (noting almost every district judge in the Southern District of California has declined to exercise supplemental jurisdiction over supplemental state law claims in similar cases alleging violations of the ADA and Unruh Act) (collecting cases).  This Court similarly finds that supplemental jurisdiction should be declined where, as here, a plaintiff appears to be filing suit in federal court for the purpose of

---

[11] <u>See also</u>, <u>e.g.</u>, <u>Brick Oven</u>, 406 F. Supp. 2d at 1132; <u>Theroux v. Mar-Con Prod., Inc.</u>, No. 19-cv-1810-H, 2019 WL 6829096, at \*3 (S.D. Cal. Dec. 13, 2019); <u>Brooke v. Tides Hosp. LLC</u>, No. 8:21-cv-00755-JLS-JDE, 2021 WL 2291737 (C.D. Cal. Jun. 4, 2021) (order to show cause why the court should not decline to exercise supplemental jurisdiction over plaintiff's Unruh Act claim); <u>Marquez v. KBMS Hosp. Corp.</u>, 492 F. Supp. 3d 1058 (C.D. Cal. 2020) (following *sua sponte* order to show cause why the court should not decline to exercise supplemental jurisdiction over plaintiff's Unruh Act claim, dismissing Unruh Act claim without prejudice to refiling in state court and retaining jurisdiction over ADA claim only); <u>Whitaker v. Mac</u>, 411 F. Supp. 3d 1108 (C.D. Cal. 2019) (denying defendant's motion to dismiss plaintiff's ADA claim but granting defendant's request to decline to exercise supplemental jurisdiction over plaintiff's Unruh Act claim); <u>Barnes</u>, 2017 WL 635474, at \*13 (declining to exercise supplemental jurisdiction over remaining state law claim after dismissing ADA claim for lack of standing); <u>Garcia v. Thunderbird Lodge, Sacramento, LLC</u>, No. 2:20-cv-02161-MCE-CKD, 2021 WL 4443179, at \*2 (E.D. Cal. Sept. 28, 2021) (declining to exercise supplemental jurisdiction over Unruh Act claim after dismissing the parallel ADA claim); <u>Langer v. Kiser</u>, 516 F. Supp. 3d 1066 (S.D. Cal. 2021) (entering judgment in defendant's favor after bench trial on ADA claim, and declining to retain supplemental jurisdiction over plaintiff's Unruh Act claim based on compelling interests of comity and discouraging forum shopping).

1    circumventing California state law.

2           Here, the Court acknowledges that Plaintiff's ADA and Unruh Act claims arise out of the

3    same facts and require application of similar standards, and that exercising supplemental

4    jurisdiction would allow these claims to be heard together in federal court.  However, exercising

5    jurisdiction over Plaintiff's Unruh Act claim would undermine the procedures established for

6    hearing such claims in California.  As the Court has noted, Plaintiff has filed over two hundred

7    and five accessibility lawsuits in district courts throughout California and Arizona *pro se*[12]—in

8    the Eastern District alone, at least sixteen of those federal lawsuits were filed within the twelve

9    months prior to initiation of the instant litigation on July 5, 2022.  Thus, Plaintiff would be

10   considered a serial litigant under California law and would be subject to a heightened pleading

11   standard in California state court.

12          As other district courts have commented under similar circumstances, "[i]t is unclear what

13   advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in

14   federal court since his sole remedy under the ADA is injunctive relief, which is also available

15   under the Unruh Act."  Cuddleback, 262 F. Supp. 3d at 1031 (finding plaintiff was engaging in

16   forum-shopping by bringing his action in federal court and attempting to avoid California's

17   heightened pleading requirements for disability discrimination claims); see also Hanna v. Plumer,

18   380 U.S. 460, 467–69 (1965) (discussing twin aims of Erie doctrine, "discouragement of forum-

19   shopping and avoidance of inequitable administration of the laws," and providing that federal

20   courts may take measures to discourage forum-shopping); Brick Oven, 406 F. Supp. 2d at 1131–

21   32 (declining to exert supplemental jurisdiction over Unruh and Disabled Persons Act claims

22   "[b]ecause a legitimate function of the federal courts is to discourage forum shopping and

23   California courts should interpret California law").  Rather, given Plaintiff could seek the more

---

[12] Of the one hundred-plus accessibility lawsuits Plaintiff initiated in the state of Arizona, the Court notes many were filed on Plaintiff's behalf by his then-attorney, Peter Strojnik Sr., who was disbarred by the State of Arizona in 2019. See Advocs. for Individuals With Disabilities LLC v. MidFirst Bank, 279 F. Supp. 3d 891, 893 (D. Ariz. 2017) (describing Strojnik's ADA litigation tactics as "extortionate" and "pervasive," which included pursuing "upwards of 160 cookie-cutter lawsuits in federal court and, from early to later 2016, more than 1,700 such suits in Arizona state court"); see also Canyon Hosp., 2018 WL 2388047, at *1–2, *4, *8 (discussing Plaintiff and Strojnik's "joint enterprise" of filing multiple lawsuits against "any Phoenix area lodgings that they believe to be out of compliance with the ADA in some respect or respects," consolidating multiple "substantially similar, boilerplate complaints" and finding they all failed to establish standing).

rewarding remedies (*e.g.*, money damages) in state court as well as injunctive relief (the only relief available in federal court), filing in federal court appears to be a strategic avoidance of the heightened-pleading requirements that would otherwise need to be met in state court.  It would be unfair to allow Plaintiff to enjoy "those parts of California law that benefit him while disallowing the parts purposefully enacted to protect Defendants."  Schutza v. Enniss Family Realty I LLC, No. 20-CV-0298 W (JBL), 2020 WL 3316969, at *3 (S.D. Cal. Jun. 18, 2020).  Therefore, the Court finds that California's enhanced pleading requirement for high frequency litigants—like Plaintiff—constitutes a compelling reason to decline the exercise of supplemental jurisdiction in the instant case.

Accordingly, to the extent the District Judge finds Plaintiff has adequately alleged jurisdiction and stated a claim for violations of the ADA, the court recommends that the District Judge nonetheless decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds Plaintiff has failed to establish Article III standing exists; therefore, the Court lacks jurisdiction over the instant matter.  Further, in its July 12, 2022 screening order, the Court provided Plaintiff the applicable legal standards and gave Plaintiff an opportunity to amend his complaint to cure the identified pleading deficiencies.  (See ECF No. 2 at 5–12.)  Plaintiff's failure to cure the identified pleading defects demonstrates either an inability or unwillingness to do so, and the Court concludes that granting further leave to amend is unwarranted.  See Lira v. Herrera, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If [Plaintiff] does not take advantage of the opportunity to fix his complaint, [the Court] may convert the dismissal of the complaint into dismissal of the entire action."); see also  Pasadena Robles, 801 Fed. App'x at 570 (finding the district court did not abuse its discretion by denying Strojnik leave to amend because amendment would have been futile) (citing Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir. 2010) (setting forth standard of review and explaining that leave to amend may be denied if amendment would be futile)).  Accordingly, the Court recommends that the complaint be dismissed, without prejudice.

However, if the District Judge finds Plaintiff has alleged facts sufficient to establish Article III standing, the Court would then find the compelling interests of comity as well as discouraging forum shopping by serial litigants such as Plaintiff support this Court's recommendation to proceed only on Plaintiff's ADA claim and to decline exercising supplemental jurisdiction over the state law claims.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The first amended complaint (ECF No. 4) be DISMISSED, without leave to amend, as frivolous due to lack of subject-matter jurisdiction and failure to state a claim; and

2. The Clerk of the Court be directed to CLOSE this case. OR,

3. *Alternatively*, if the District Judge finds the amended complaint adequately establishes Article III standing and states a claim under the ADA, the Court recommends the following:

   a. The first amended complaint proceed only on Plaintiff's ADA claim;

   b. The Court either decline to exercise supplemental jurisdiction over Plaintiff's state law claims or order Plaintiff to show cause why it should not decline to exercise supplemental jurisdiction over Plaintiff's state law claims; and

   c. All other claims, to the extent Plaintiff has attempted to assert any, be DISMISSED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **twenty-one (21) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

The district judge will review the magistrate judge's findings and recommendations

1   pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within

2   the specified time may result in the waiver of the "right to challenge the magistrate's factual

3   findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v.

4   Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

5

6   IT IS SO ORDERED.

7   Dated:   **October 6, 2022**

    UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28